liCIACCIO, Judge.
Defendant, Gerald Ross, was charged with one count of attempted armed robbery and one count of attempted second degree murder.[1] Following a trial, a twelve-member jury found him guilty as charged of attempted armed robbery and guilty of attempted manslaughter. The trial judge sentenced defendant on the attempted armed robbery count to forty-nine and one-half years at hard labor without benefit of parole, probation, or suspension of sentence and to twenty years at hard labor on the attempted manslaughter count to run consecutively. The State filed a multiple bill, and the trial judge found defendant to be a fourth offender. The judge vacated the attempted armed robbery sentence and resentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
On January 9, 1996, at approximately 2:00 a.m., at the Scottish Inn on Gentilly Road, Matthew Short was on duty as a security guard, and Gwendolyn Ward was on duty as night auditor. Ward testified that a white car drove past three times and then stopped. Short saw defendant exit the car, and Short opened the door of the lobby. Short saw a woman and two children in the ear. Short testified that defendant then pulled out a gun which Short grabbed. The two men struggled, and Short managed to shut the lobby door to keep a second |2man from entering. Ward went to the back to call 911. Short fell during the struggle, and defendant pointed the gun at him. The gun clicked; Short grabbed defendant; and the struggle resumed. The gun discharged during the second struggle, but no one was hit. Defendant kept pulling on the trigger, and Short pushed defendant away. Short was then able to draw his own weapon and ordered defendant to freeze. Defendant did not stop, and Short shot him in the leg when defendant tried to pick the gun up from the floor. Defendant then jumped through a closed window and landed on a rose bush. Short saw Gordon who asked him not to kill the father of her baby. Short then tried to shoot the tire of the car but missed. Defendant and Gordon got into the car and left. Short picked defendant’s picture out a photographic lineup.
Gordon, defendant’s girlfriend, testified that she, defendant, his brother John, and her two children were coming back from Kenner when they drove through the parking lot of the Scottish Inn. They then drove *922 to a gas station next door to the hotel where defendant bought cigarettes. They drove back to the hotel parking lot and stopped. Gordon testified that defendant and his brother exited the car and that John put a gun in defendant’s pocket. She thought that they were going to cheek on room rates. She further testified that only the defendant went inside and that John ran. She saw defendant struggling with the security guard over the gun and heard the gun go off. She then saw the security guard pull out his gun and heard another shot. Gordon saw defendant jump through the window, and she begged the guard not to shoot defendant. She and defendant got back into the ear and drove to a friend’s house. She testified that defendant apologized to her for taking her and the children with him to commit a robbery. Defendant did not want to go to a hospital to have the gunshot wound treated because the police would be called. | .-¡She testified that defendant was angry because John was supposed to cover him and because the security guard was playing hero.
Defendant testified that he, Gordon, and his brother went to the hotel to check on rates and that Gordon told him not to go in because he had been drinking. He stated that he reached under the seat to get the bag that had the bottle of alcohol in it in order to dispose of it in the hotel lobby. He put the bag in his pocket which he pulled out when he got into the lobby. Defendant stated that after he pulled the bag out of his pocket, the security guard attacked him and pulled the trigger on a gun. Defendant further testified that when the gun did not go off, he charged the security guard. They struggled over the gun which defendant got away from the security guard. He testified that after he told the security guard to freeze and that he would explain things, the security guard charged him. Defendant further testified that the gun had been in the bag that he had pulled out from under the car seat and that he did not know the gun was in the bag. Defendant also stated that the security guard pulled out his own gun and shot defendant in the leg. Defendant said that he then decided to jump through the window.
A review of the record reveals no errors patent.
As his sole assignment of error, defendant complains that the trial court erred in refusing to grant a continuance and that this violated his right to effective counsel. He argues that his counsel had only minimal time to prepare for trial because he had been appointed to represent defendant on the day of trial after defendant had been represented by other counsel in pretrial proceedings.
The decision of whether to grant or deny a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not ^disturb such a determination absent a clear abuse of discretion. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218; State v. Evans, 94-2209 (La.App. 4th Cir. 2/5/97), 688 So.2d 1287. A showing of specific prejudice is generally required to demonstrate that the trial court erred in denying the continuance. State v. Cockerham, 95-0172 (La.App. 4th Cir. 3/14/96), 671 So.2d 967. Where the continuance motion is based on inadequate time for counsel to prepare, the specific prejudice has been disregarded only when the preparation time was so minimal as to call into question the basic fairness of the proceeding. Id.
After the jury was selected, defendant objected to being represented by Ross Scaccia and not Bruce Whittaker. Whittaker had represented defendant in pretrial hearings, but Scaccia was appointed to represent defendant on the morning of trial. Defendant argued that he did not believe that Scaccia was familiar with the ease; and, Scaccia stated that he had earlier asked for a continuance to get extra time. He further stated that he reviewed the police report but that he had not had time to talk to defendant because he had been trying to do his best to get ready. The trial judge asked Scaccia if he was ready and felt competent to try the case. Scaccia stated that he did not think he was prepared and that he had discussed the case with Whittaker who gave him a little information. The judge told Scaccia to sit down and talk with defendant and then tell him what he [Scaccia] needed to try the ease. There was a recess; and, after the recess, *923 Scaecia informed the trial judge that he read a pretrial transcript and discussed the matter with defendant. He stated that he could proceed with the case and did not know what else to tell the court. Defendant stated that there were a lot of inconsistent statements in the transcript and that he did not think that Seaceia could represent him just by reading the transcript. |5The judge asked Scaecia if there were any witnesses that he needed, and Scaecia stated that he did not. The trial judge further asked him if he were prepared to proceed; and, Scaecia replied that he felt like he could under the conditions and that nothing was going to change. Defendant stated that he would proceed if he had no choice. Seaceia stated:
Your Honor, the case, according to the defendant — and I’ll say this for the record. The jury is not here. It revolves around whether they are going to believe the defendant’s interpretation or they’re going to believe the victim’s interpretation. So that’s it.
The way I see it right now I intend to put the defendant on the stand. He tells me the whole thing was a misinterpretation. If that’s the ease, I think it’s going to be a jury question. I don’t see where any witnesses or anything that are out there that we could get that would necessarily change that in any way.
(Vol. 3, trial tr. pp. 22-28).
The trial judge again asked Scaecia if he felt as though he was prepared to bring out any inconsistencies or contradictory statements, and Scaecia said that he was. Defendant objected, and the trial judge stated:
I’m going to note your objection. He says he’s ready to proceed with your trial if the case is based on inconsistencies. He said he’s reviewed the documents. That’s what he’s telling me. He has reviewed the documents. He says he has had an opportunity to talk to you. He said he’s prepared to try your case based on inconsistencies.
He also said if you want to take this witness stand, you have every right to do so, and you can tell your story. Mr. Scac-cia is correct. They’re going to present certain witnesses, and the jury is going to listen to them. Then Mr. Scaecia and you have the right to present witnesses. They’re going to listen to you, if you get up there. It’s who they believe. That’s what’s it about.
If they believe you, you go home. If they don’t believe you, you lose. That’s what it’s about.
He has the transcripts of prior statements. If those statements are different from what they say, he can bring that out to the jury. It’s going to boil down to if that jury believes those people, you lose. If they believe you, you win. And that’s the end of it.
(Vol. 3, trial tr. pp. 26-27).
We do not find that the trial court erred in denying a continuance. |6Pefense counsel was thoroughly questioned as to whether he felt he was ready for trial and was given a recess to discuss things with defendant and to review transcripts. Although the case was given to Scaecia on the morning of trial, preparation time does not appear to have been so minimal as to call into question the basic fairness of the proceeding. The trial judge went to great pains to make sure that defense counsel did not need any more time to prepare for trial. Therefore, there was no abuse of discretion in the denial of the continuance. This assignment of error is without merit.
As a pro se assignment of error, defendant complains that the State violated due process when it did not subpoena videotapes taken by the hotel’s surveillance cameras. Defendant asserts that the videotapes contained exculpatory evidence because the tapes would have contradicted the testimony of Matthew Short and argues that the State’s failure to produce the videotapes violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In his testimony at the preliminary hearing, Matthew Short stated that there were video surveillance cameras at the hotel. The record contains the report of the crime lab detailing what evidence was taken from the hotel, and there is no reference to the seizure of any surveillance videotapes. There was no mention of the surveillance tapes at trial.
*924 As stated in State v. Badeaux, 95-1563 (La.6/30/95), 657 So.2d 1306, the discovery provisions of the Code of Criminal Procedure and Brady impose no obligation on the State to obtain records over which it has never had custody or control. See also State v. Brown, 620 So.2d 508 (La.App. 4th Cir.1993). Because the record shows that the State never had custody or control over the surveillance videotapes, it had no obligation to produce them. This assignment of error is without merit.
^Accordingly, for the above reasons, defendant’s convictions and sentences are affirmed.

AFFIRMED.

. John Ross and Sharelle Gordon were charged along with defendant on the attempted aimed robbery count; but, the charge against Gordon was reduced to accessory after the fact to attempted armed robbery. John Ross was found not guilty. Defendant and Eugene Dorsey were also charged in the same bill of information with first degree robbeiy; but, defendant was found not guilty on this count. Dorsey’s trial was severed from defendant's.