# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-515

STATE OF LOUISIANA

VERSUS

CALVIN CHARLES BARFIELD

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 302,399
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION
JUDGE**

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**

**James C. Downs**
**District Attorney - 9th Judicial District Court**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel forAppellee:**
**State of Louisiana**

**Monique Yvette Metoyer**
**Assistant District Attorney - 9th Judicial DistrictCourt**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel for Appellee:**
**State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
**Calvin Charles Barfield**

**GREMILLION, Judge.**

Defendant, Calvin Charles Barfield, was convicted of simple escape, in violation of La.R.S. 14:110, and was initially ordered to serve four years at hard labor, with the first two years to be served without benefit of probation, parole, and suspension of sentence. Prior to the conclusion of the hearing, however, the prosecution filed a habitual offender bill charging Defendant as a fourth felony offender.

Following presentation of the evidence at the habitual offender hearing, the trial court vacated Defendant's prior sentence. The trial court found Defendant to be a second felony offender, ordered Defendant to serve eight years at hard labor without benefit of probation, parole, or suspension of sentence, and credited Defendant with time served.

Defendant now appeals and assigns a number of errors.

## STATEMENT OF FACTS

At the time of the alleged escape, Defendant was under house arrest, and the terms of the confinement are not at issue. Deputy Julie Sasser, with the house arrest division of the Rapides Parish Sheriff's Office, was assigned to oversee Defendant's house arrest. Deputy Sasser explained that the house arrest program is available for both sentenced inmates and defendants in a pretrial situation. Each individual in the house arrest program is outfitted with an ankle bracelet with a small transmitter that sends signals to a monitoring unit placed in the person's home. The person with the ankle bracelet is only allowed to move a certain designated radius from the monitoring unit. This allows the officers in the house arrest division to ensure that pretrial inmates meet their court dates.

Deputy Sasser said that both Defendant and the company in charge of monitoring the electronic house arrest system were provided with a document setting forth the rules and regulations of Defendant's house arrest. The document

also listed Defendant's daily allowed movement. Deputy Sasser explained that Defendant's house arrest was set up at 110 Jay Von Drive in Pineville. Pursuant to the court's order, Defendant was only allowed out for work, church, doctor's visits, and appointments with his attorney. Defendant was required to inform Deputy Sasser ahead of time to schedule each of the exceptions to his house arrest.

Deputy Sasser related that, on May 16, 2010, she was at home when she received a call from Cynthia Barfield at approximately 8:30 p.m. Mrs. Barfield reported that Defendant had left home in her red Ford F150 with three bottles of her medication. Before leaving, Defendant stated that he was not going back to jail. Mrs. Barfield predicted that Defendant would drive to Alexandria to sell the pills before fleeing to Texas. At about the same time, Deputy Sasser received an alert that Defendant's ankle transmitter was out of the range of its monitor.

Deputy Sasser recalled contacting Deputy Butler, who was also working in the house arrest division. Together, they drove to a specific area in Alexandria in an attempt to locate the truck. They were unable to locate Defendant that evening. The following morning, Deputy Sasser called Defendant and asked him to turn himself in to authorities. Defendant requested to end the call and stated he would call Deputy Sasser back within a few minutes. While she waited, Deputy Sasser began the paperwork to obtain an arrest warrant for Defendant based on his escape.

Deputy Sasser said that, late in the morning, she received a call that led her and Deputy Butler to Woodworth. There, the deputies met with Chief Gonzales and some store clerks at the local Dollar General Store. At that location, Deputy Sasser was given the transmitter assigned to Defendant for the duration of his house arrest. The serial number on the transmitter given to Deputy Sasser matched the serial number of the transmitter assigned to Defendant. The transmitter was in the same condition as it was when assigned to Defendant; it had not been tampered with. Deputy Sasser did not retain the rubber strap; she discarded it on the date the

2

transmitter was returned to her possession. The strap had been cut through at the mid-point.

Deputy Sasser said that her investigation included a review of the Dollar General Store's security recording from the evening of Defendant's flight. Deputy Sasser identified Defendant as one of the individuals depicted on the video recording. Although Deputy Sasser did not initially ask for the video footage from the store, she subsequently requested it for the purposes of this case. At that time, the store had already recorded over the pertinent footage.

Deputy Sasser remembered that, after examining the video footage, she returned to her office in Alexandria to complete her paperwork. That evening, Deputy Sasser was notified that Defendant was in the Overton area of Alexandria, where she and Deputy Butler apprehended Defendant at the Federal Credit Union on Broadway. Defendant was not wearing the ankle transmitter at the time of his apprehension, and he had not been given permission to remove it. Defendant was in a red Ford F150, as described by Mrs. Barfield, when he was caught. The vehicle was released to Mrs. Barfield.

Deputy Sasser explained that when Defendant was placed on house arrest, he had not made bond; he was still under the confines of the sheriff's office. Defendant did not request permission to go to the Woodworth area on May 16, and he did not request permission to be in Alexandria on May 17.

Tracie Guffey also appeared as a witness for the prosecution. Ms. Guffey worked as the manager of the Dollar General Store in Woodworth, and she held that position on May 16-17, 2010. During her store check, Ms. Guffey discovered a pair of scissors, which had been taken out of the package; they had black marks on them. While looking for the package, Ms. Guffey discovered an ankle bracelet. She then went to the office and reviewed the security recording to see who had left the ankle bracelet in the store. She described seeing a man "take the scissors off

3

the shelf," "bend over like in a cutting motion," and "put the scissors back on the shelf." Ms. Guffey also testified that she found the scissors and the ankle bracelet "exactly" where she determined they would be based on the video footage. Thereafter, she called Chief James Gonzales of the Woodworth Police Department.

Ms. Guffey stated that she was not present when Deputy Sasser watched the video; she had a meeting, and was unable to physically assist Chief Gonzales in showing the recording to Deputy Sasser. Instead, she explained to Chief Gonzales over the phone how to access the images because the other employees were not allowed access to the security footage.

On May 17, 2010, Chief Gonzales received a call from Ms. Guffey, which resulted in his meeting with her at the Dollar General Store. Ms. Guffey presented Chief Gonzales with an ankle monitor and bracelet, and Chief Gonzales watched the store's surveillance video. Chief Gonzales contacted the house arrest division of the sheriff's office. Deputy Butler, Chief Gonzales' contact, confirmed that the item belonged to the sheriff's office. Later that day, Chief Gonzales met with Deputies Sasser and Butler at the Woodworth Dollar General Store, where he showed them the security footage and gave them the ankle transmitter.

Deputy Edward Butler of the Rapides Parish Sheriff's Office also testified that he and Deputy Sasser went to Woodworth where they met Chief Gonzales at the Dollar General Store and reviewed video surveillance footage. After watching the recording, Deputy Butler was able to identify Defendant as the person shown on the footage.

Deputy Butler said that, when he and Deputy Sasser returned to Alexandria, they requested additional aid in locating Defendant. As a result of that request, Deputy Kim Hall of the Rapides Parish Sherriff's Office apprehended Defendant. Deputy Butler went to the scene of Defendant's apprehension and noticed that

4

Defendant was not wearing his ankle transmitter. Defendant was in a red Ford at the time he was stopped.

On May 17, 2010, Deputy Hall received a dispatch directing her to be on the lookout for Defendant and informing her that he may have been driving a red Ford truck bearing a specific license plate number. As a result, Deputy Hall was able to assist in apprehending Defendant.

Deputy Hall explained that, upon receiving the dispatch, she contacted Deputy Butler. After speaking with Deputy Butler, Deputy Hall left a stationary position and began driving. As she traveled, she noticed a red Ford truck in front of Peabody High School bearing the specified license plate number. Deputy Hall activated her blue lights, and Defendant pulled his truck to a stop in front of the credit union on Broadway Avenue. Deputy Hall left her unit, directed the person to exit the truck, ordered him to lie on the ground, and handcuffed Defendant. Deputy Hall then verified that the man was Defendant.

## ERRORS PATENT

In this case, the court minutes state the trial court imposed the enhanced sentence at hard labor, whereas the transcript is silent. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62.

The penalty for escape, in this case from house arrest, provides that the sentence is to be with or without hard labor. La.R.S. 14:110(A)(3). At the time of the commission of the escape, La.R.S. 15:529.1 was silent as to whether or not the enhanced sentence imposed should be served at hard labor. In cases such as this where the penalty provision allows the trial court to order the sentence to be served with or without hard labor, this court has recognized as an error patent the trial court's failure to do so.

5

In *State v. Pettus*, 10-777 (La.App. 5 Cir. 5/24/11), 68 So.3d 28 , on error patent review, the appellate court recognized the error, but chose to simply remand the matter to the trial court for clarification. We remand this matter to the trial court to allow clarification of the habitual offender sentence.

Next, the trial court improperly denied Defendant parole eligibility. Although Section G of La.R.S. 15:529.1 requires all enhanced sentences to be imposed without benefit of probation or suspension of sentence, it does not authorize the trial court to impose enhanced sentences without benefit of parole. "[T]he restrictions on parole eligibility imposed on multiple offender sentences under La.R.S. 15:529.1 'are those called for in the reference statute.' (citation omitted)" *State v. Tate*, 99-1483, pp. 1-2 (La. 11/24/99), 747 So.2d 519, 520. The penalty provision for simple escape, the reference statute, does not authorize the trial court to impose any portion of the sentence without benefit of parole. La.R.S.14:110. Consequently, we amend Defendant's sentence to delete the denial of parole eligibility and instruct the trial court to make an entry in the minutes reflecting this change. *State v. Dossman,* 06-449, 06-450 (La.App. 3 Cir. 9/27/06), 940 So.2d 876, *writ denied*, 06-2683 (La. 6/1/07), 957 So.2d 174.

### ASSIGNMENT OF ERROR NUMBER ONE

Defendant claims there is insufficient evidence to support his conviction. Defendant argues that, though he was under house arrest, he could not have escaped because he was not imprisoned, committed, detained, or in the lawful custody of the Rapides Parish Sheriff's Office. Defendant urges that, instead of prosecuting him for escape, the State should have sought a remedy suitable for a bail violation.

The State responds that Defendant's actions falls with the prohibition set forth in La.R.S. 14:110 because he was confined at home under the jurisdiction and

6

control of the sheriff's office. The Louisiana Supreme Court has discussed the standard of review for evaluating the sufficiency of the evidence on appeal:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (citations omitted).

The evidence shows that Defendant was arrested on charges not discussed at trial. Defendant did not bond out or post bail following his arrest. Instead of requiring Defendant to remain in jail until his trial, the district court allowed him to participate in the Rapides Parish Home Incarceration Program run by the Rapides Parish Sheriff's Office. Defendant's home incarceration was managed by Rapides Parish Sheriff's Deputy Sasser. As part of his home incarceration, Defendant was outfitted with an ankle transmitter and required to remain within a certain radius of a monitor installed in his home. Defendant was required to provide Deputy Sasser with a schedule of any out-of-bounds trips, and those trips were only allowed for limited purposes. The record shows that Defendant intentionally left his house for an unscheduled movement, the purpose for which Defendant informed his wife was flight from prosecution. Defendant's home monitor signaled that Defendant had left his home boundary during an unauthorized time. Defendant then removed and abandoned his ankle transmitter; he evaded officers, who were actively searching for him, into the next day.

7

Simple escape includes the following actions:

(1) The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.

. . . .

D. For purposes of this Section, a person shall be deemed to be in the lawful custody of a law enforcement officer or of the Department of Public Safety and Corrections and legally confined when he is in a rehabilitation unit, a work release program, or any other program under the control of a law enforcement officer or the department.

E. The provisions of this Section shall be applicable to all penal, correctional, rehabilitational, and work release centers and any and all prison facilities under the control of the sheriffs of the respective parishes of the state of Louisiana. The prison facilities shall include but are not limited to parish jails, correctional centers, work release centers, and rehabilitation centers, hospitals, clinics, and any and all facilities where inmates are confined under the jurisdiction and control of the sheriffs of the respective parishes.

La.R.S. 14:110.

Thus, for the purposes of this article, the record shows that Defendant was participating in the house arrest program controlled by the Rapides Parish Sheriff's Office, and the officer assigned to manage Defendant's home incarceration was Deputy Sasser. Moreover, Defendant was being legally imprisoned or detained at home by the Rapides Sheriff's Office through the physical means of an ankle transmitter and a corresponding monitor installed in the home; together, the transmitter and monitor acted as an electronic "leash." Defendant was also kept in his home through the regulations and rules set forth by the "Conditions of Rapides Parish Home Incarceration" signed by Defendant and authorized by the district court.

Defendant then intentionally left both his designated place of detention and the lawful custody of Rapides Parish Sheriff's Deputy Sasser by driving away; he

8

further intentionally terminated Deputy Sasser's lawful custody by removing and abandoning his ankle transmitter. The record does not show that human life was endangered at any point during Defendant's flight from prosecution and house arrest.

In *State v. Bullock*, 576 So.2d 453, 455 (La.1991), the defendant argued that the State did not prove that he was in the lawful custody of any law enforcement officer at the time of his escape as his flight had occurred after arrest but before he was jailed. Noting that the statute did not require the defendant to have been both legally confined and in lawful custody, the supreme court found sufficient evidence to uphold the defendant's conviction as he had been in lawful custody at the time of his escape. *Id*. at 455-56.

The footnote in *State v. Thompson*, 09-128, p.3 (La.App. 5 Cir. 9/29/09), 22 So.3d 1105, 1107, n.1 discusses some of that defendant's other convictions. The note states that the defendant had been "charged with simple escape, based on [the] removal of his ankle bracelet while he was on home incarceration pending trial of" a drug offense. *Id*. The defendant pled guilty to the simple escape charge; however, as noted by the fifth circuit, no issues involving the defendant's simple escape conviction were part of the defendant's appeal. *Id*. Thus, at least one defendant in this state has been charged with and convicted of simple escape based on a factual scenario similar to that presented by the instant case.

Though Defendant cites *Herbert v. Layrisson*, 02-361 (La.App. 3 Cir. 5/9/03), 849 So.2d 643, *writ denied*, 03-1591 (La. 10/3/03), 855 So.2d 318, in support of his argument that he was not in custody at the time of his flight, there is an important distinction. In *Herbert*, the defendant had been released from custody on his own recognizance. *Id*. at 648. In the instant case, Defendant never posted bail, did not bond out, and was not released on his own recognizance; instead,

9

Defendant was enrolled in the Rapides Parish Sheriff's Office Home Incarceration Program.

Therefore, when the evidence is viewed in the light most favorable to the prosecution, there is sufficient evidence to support Defendant's conviction for simple escape.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues, "The trial court erred in failing to grant the Motion to Quash the Bill of Information urged by the defense." Defendant asserts that the district court should have quashed the bill of information as it was fatally defective. Defendant urged that, even assuming the State proved the factual allegations against Defendant, Defendant's actions did not constitute a violation of La.R.S. 14:110(E). Defendant alleges the trial court erroneously denied the motion upon finding that it asserted a defense on the merits of the case against Defendant. Defendant further complains that the district court's jury instructions prevented the jury from deciding the matter during their deliberations.

The State replies that the bill of information was not defective. The allegation under provision "E" was illustrative and alleging "simple escape from house arrest" was an alternate way of alleging the offense of simple escape.

The bill of information filed in Defendant's case reads as follows:

> THE UNDERSIGNED ASSISTANT DISTRICT ATTORNEY FOR THE NINTH JUDICIAL DISTRICT, PARISH OF RAPIDES, LOUISIANA, CHARGES THAT, WHILE IN THE PARISH OF RAPIDES, LOUISIANA

> ### CALVIN CHARLES BARFIELD

> COMMITTED THE OFFENSE OF:  ESCAPE     FROM     HOUSE
>                                                         ARREST R.S. 14:110 E;

> **IN THAT HE DID ON OR ABOUT THE 16TH DAY OF MAY, 2010,** escape from the jurisdiction and control of the Rapides Parish Sheriff's Department House Arrest Program, Alexandria, Louisiana, in violation of R.S. 14:110 E;

The defense filed a motion to quash the bill of information on the basis that the State would be unable to prove one element of the offense:

> Defendant shows that the Bill of Information should be quashed on the grounds that the alleged conduct does not constitute a violation of La. R.S. 14:110 in that the defendant was not confined nor in the custody of the Rapides Parish Sheriff's Department while participating in the "House Arrest Program."

Defendant further asserted the State failed to sufficiently allege a violation of La.R.S. 14:110 in the charging instrument: "Defendant shows that he is entitled to have the Bill of Information filed herein quashed on the grounds even if the State of Louisiana proves all of the allegations of the Bill of Information the crime charged will not be implicated."

The trial court denied Defendant's motion to quash and gave oral reasons for its ruling wherein it opined the state's inclusion of the phrase "from house arrest" was not fatally defective, but rather only "a further explanation." Regardless of the state's choice of words, the trial court found it could only prevail if it could "show lawful confinement and escape from lawful confinement." The court below is correct.

La.Code Crim.P. arts. 532 and 534 set forth the grounds for quashing a charge. The supreme court has described claims raised via a motion to quash as "pleas which do not go to the merits of the charge," and as "procedural matters" wherein "the question of factual guilt or innocence is not before the court." Accordingly, allegations by the defendants that are, in reality, defenses on the merits to the state's charge are "not proper grounds for a motion to quash." *State v. Byrd*, 96-2302, pp. 18-20 (La. 3/13/98), 708 So.2d 401, 411-12, *cert. denied*, 525 U.S. 876, 119 S.Ct. 179 (1998) (citations omitted) (footnotes omitted).

Defendant has consistently claimed that the bill of information is defective because the State could not prove Defendant escaped from a facility where he was confined under the jurisdiction and control of the sheriff's office. This is a defense

11

to the merits of the charge against Defendant and, therefore, does not constitute a proper ground for a motion to quash.

Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

Defendant asserts, "The trial court deprived Appellant of due process when it denied the defense's request for special jury instructions. The court also erred in its instructions to the jury. To the extent the jury instruction issue was not preserved, counsel rendered ineffective assistance." Defendant claims that the trial court failed to adequately instruct the jury on its duty to determine whether home incarceration was encompassed by La.R.S. 14:110. Defendant contends that the jury instructions, as read, informed the jurors that house arrest was encompassed by the statute. Defendant urges that, instead, the district court should have included the special jury instructions requested by the defense.

Defendant further claims that the trial court erred in refusing to include his requested jury instructions that, as a legal presumption, any evidence under the control of the State was not entered into evidence because it would not have aided the State in the prosecution of the case. Defendant urges that the district court's ruling was erroneous because the State failed to preserve physical evidence in his case. Defendant declares that the ankle strap to the monitoring device and the videotape from the Dollar General Store were both within the control of the State.

The State rejoins that the jury instructions given by the trial court were proper. Moreover, as there was no contemporaneous objection, this court should not consider Defendant's arguments on this issue. The State adds that the addition of the word "otherwise" constituted harmless error, that the jury knew through the house arrest agreement that Defendant was charged with three other offenses, that the district court correctly determined that house arrest was covered by La.R.S. 14:110, and that the trial court did not comment on the facts of the case.

12

The State continues that the special jury instructions requested by Defendant were not appropriate to the case. Defendant requested a jury instruction that gave tampering with an electronic monitoring device as a responsive verdict to simple escape should the jury find Defendant was not in the custody of the sheriff's office. The State points out that this was not appropriate because tampering with an electronic monitoring device is not a responsive verdict to simple escape, and that the charges pending against Defendant did not involve domestic violence, which is an integral element of tampering with an electronic monitoring device as set forth by La.R.S. 14:110.2. The State does not address Defendant's second argument involving legal presumptions.

On November 16, 2010, Defendant filed a motion requesting special jury instructions concerning the reading of La.R.S. 14:110.2. The first special instruction would have directed jurors to find Defendant guilty of tampering with an electronic monitoring device in the event the jury found Defendant was not in the custody of the Rapides Parish Sheriff's Office: "The accused respectfully asks this Court to instruct the jury that if it finds that the accused's actions occurred while not in the custody of the Rapides Parish Sheriff, then a reading of R.S. 14:110.2 would indicate that he is guilty of tampering with an electronic monitoring device." The second special instruction requested by the defense was that the trial court direct the jury to find Defendant "not guilty" if it found that Defendant had acted in violation of La.R.S. 14:110.2:

> Therefore, the accused requests this Court to read R.S. 14:110.2 in its entirety to the jury and instruct them accordingly under the authority of *State v. Marse*, 365 So.2d 1319 (La.1978), and instruct it that if they find that the evidence points to a violation of R.S. 14:110.2 then it must return a verdict of "not guilty."

The following day, Defendant filed a second motion for special jury instructions regarding legal presumptions:

A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption. . . ***that evidence under the control of a party and not produced by him was not produced because it would not have aided him***[.]

During a trial conference held outside the presence of the jury immediately prior to closing arguments, the district court denied both of Defendant's motions for special jury instructions:

> Before we bring the jury back in, what I was going to do is just go over the jury charges. We've made, uh. . .some changes have been made, and I've gotten two requested jury charges submitted to me, and I am. . .by the defense, and I'm going to reject both of them. One of them would. . . The basis for rejecting the guilty with tampering with an electronic monitoring device, is I, I don't find that's responsive to the simple escape, and I don't find that the second one would be appropriate in this situation based upon the facts that have been testified in op. . .to which have been testified in open court, and I know that Mr. Murry objects to that ruling.
>
> The court shall charge the jury:
>
> (1) As to the law applicable to the case;
>
> (2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
>
> (3) That the jury alone shall determine the weight and credibility of the evidence.

La.Code Crim.P. art. 802. "A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent." La.Code Crim.P. art. 807.

Defendant first requested a jury instruction providing the jurors with a reading of La.R.S. 14:110.2 and directing the jury to find Defendant not guilty of simple escape if it found La.R.S. 14:110.2 applicable to the instant case. The statute Defendant requested reads as follows: "Tampering with electronic monitoring equipment is the intentional alteration, destruction, removal, or disabling of electronic monitoring equipment being utilized in accordance with the

14

provisions of R.S. 46:2143." La.R.S. 14:110.2(A). However, as pointed out by the State, La.R.S. 46:2143 applies to cases involving domestic violence:

> When a court issues any peace bond, temporary restraining order, protective order, preliminary injunction, permanent injunction or court-approved consent agreements pursuant to R.S. 46:2131 et seq. [Chapter 28. Protection from Family Violence Act], R.S. 9:361 et seq. [Part IV. Post-Separation Family Violence Relief Act], R.S. 9:372 et seq. [Chapter 1. Divorce, Part V. Injunctions and Incidental Orders], Children's Code Article 1564 et seq. [Chapter 8. Domestic Abuse Assistance], Code of Civil Procedure Article 3604 [Chapter 2. Injunction], or as part of the disposition, sentence, or bail condition of a criminal matter pursuant to Code of Criminal Procedure Articles 327.1 [Uniform Abuse Prevention Order] or 871.1 [Uniform Abuse Prevention Order] for the purpose of preventing acts of domestic violence, the court may also order the domestic violence offender to participate in an electronic monitoring program. However, the use of electronic monitoring equipment shall be used only if the domestic abuse victim has consented to its use.

Therefore, as there was no evidence presented at trial that Defendant was enrolled in the home incarceration program as a result of an arrest involving domestic violence, La.R.S. 14:110.2 is not pertinent to the instant case. Consequently, the trial court did not abuse its discretion in refusing to include Defendant's requested instructions regarding La.R.S. 14:110.2 as they were not pertinent.

Defendant also requested a special jury instruction "that evidence under the control of a party and not produced by him was not produced because it would not have aided him." This is a legal presumption set forth by statute:

> A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence . . . that evidence under the control of a party and not produced by him was not produced because it would not have aided him; that the witnesses have told the truth.

La.R.S. 15:432.

In *State v. Ballay*, 99-906, pp. 19-21 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 129-30, *writ denied*, 00-908 (La. 4/20/01), 790 So.2d 13, the fifth circuit pointed out that evidence not under the control of a party is not subject to this presumption:

The defendant argues that the trial court erred in failing to give the jury a special jury charge on legal presumptions that states "that evidence under the control of a party and not produced by him was not produced because it would not have aided him" pursuant to La. R.S. 15:432. The State responds that the trial court's general charges regarding legal presumption are a proper recitation of La.R.S. 15:432 and there was no need for a special instruction. The State further responds that the proposed jury instruction is not "wholly correct and pertinent" because the items not produced were not in the control of the State and the trial court correctly did not adopt the defendant's proposed jury instruction.

Failure to read a special jury charge constitutes reversible error only when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right. *State v. Bailey*, 97-493 (La.App. 5 Cir. 11/12/97), 703 So.2d 1325, 1330.

La.C.Cr.P. art. 807 provides, in pertinent part:

> A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.

The requested charge was based on La.R.S. 15:432 which provides in pertinent part:

> A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; . . . that evidence under the control of a party and not produced by him was not produced because it would not have aided him; . . .

Defendant argues that if that charge had been given, the jury would have given greater weight to the fact the State failed to present certain items as evidence; namely, (1) a surveillance tape at K-Mart on August 10, 1997, (2) the Maison Blanche bag in which the defendant placed the shoplifted items on August 10, 1997, (3) a sales receipt allegedly produced by the defendant on August 10, 1997, (4) the statement made to Deputy Brocato by Ms. Berkel.

From a review of the record, it is clear that there was no surveillance video of defendant on August 10, 1997 because the video machine was set up at the cash register and not on the service desk. Ms. Berkel testified that the Maison Blanche bag and the items of clothing were never in the custody of the State because the items placed in the Maison Blanche bag were photographed and the photograph was placed into evidence. Ms. Berkel also testified the sales receipt was in K-Mart's control and the State never assumed

control of it because she was too upset to remember to ask Ms. Talabock for it.

In *State v. Arnaud*, the Louisiana Supreme Court reviewed the same jury charge in a similar situation where the items that were not presented for evidence were not in control of the State. *State v. Arnaud*, 412 So.2d 1013, 1019-1020 (La.1982). The Arnaud court found that the legal presumption in defendant's proposed jury instruction was not wholly correct or pertinent because the items were not under the control of the State. *Id*. The *Arnaud* court found that "whether these items were produced or not goes to the weight of the evidence." *Id*. We also find that the lack of production of the items goes to the weight of the evidence in this case.

The *Arnaud* court found that the presumption did not apply even if the State could have placed the evidence under its control but failed to do so. *Arnaud*, 412 So.2d at 1020.

In the instant case, the State had an opportunity, though brief, to preserve the ankle strap and the surveillance video by taking them into its custody; however, as in *Ballay* and *Arnaud*, the State failed to do so. As the State did not have custody or control of the evidence, the presumption set forth in La.R.S. 15:432 did not apply. Thus, the trial court did not err in refusing to include the legal presumption in its jury instructions.

Review of the record shows that the portion of this assignment of error that Defendant did not preserve by objection pertains to Defendant's claim that the jury instructions were erroneous in that the trial court directed the jury, "Simple escape is the intentional departure of a person in prison, committed, detained *or otherwise* in the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections, or from a place here he is legally confined." (Emphasis added). "A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection there is made before the jury retires or within such time as the court may reasonably cure the alleged error." La.Code Crim.P. art. 801(C). Hence, this portion of Defendant's assignment of error is not properly before this court.

17

Defendant contends:

> The trial court erred in overruling the defense's objection during the State's case-in-chief to the introduction of statements made by Mrs. Barfield, who had asserted her spousal privilege to not testify, depriving Appellant of the opportunity to cross-examine her as to these statements, in violation of his Sixth Amendment rights.

Defendant argues that, since Mrs. Barfield refused to testify at trial by asserting her spousal privilege, the State should have been prohibited from allowing others to repeat her prior statements during their testimony. The State responds that the trial court allowed Mrs. Barfield's prior statements into evidence upon finding that they were *res gestae*. Moreover, Mrs. Barfield's assertion of her spousal privilege made her unavailable, and the prosecution could not force her to testify. The State points out that Mrs. Barfield's report to police, along with the monitor alert, triggered the investigation. The State asserts that the statements were not testimonial in nature as Mrs. Barfield was calling for help, the conversation was not initiated by law enforcement, and the deputy did not interrogate Mrs. Barfield.

The defense replied that the information would also constitute prior bad acts evidence, that the prejudicial effect of the information outweighed its probative value, and that, though *res gestae*, it was not necessary for the prosecution of the case. The State rejoined that the information's probative value outweighed any prejudicial effect and that an explanation of how law enforcement was alerted to Defendant's escape was an integral part of the case.

Under La.Code Evid. art. 505, a person may assert a privilege against testifying for the State in a trial against his or her spouse:

> In a criminal case or in commitment or interdiction proceedings, a witness spouse has a privilege not to testify against the other spouse. This privilege terminates upon the annulment of the marriage, legal separation, or divorce of the spouses. This privilege does not apply in a criminal case in which one spouse is charged with

a crime against the person of the other spouse or a crime against the person of a child including but not limited to the violation of a preliminary or permanent injunction or protective order and violations of R.S. 14:79.

The supreme court has held that *res gestae* statements by a spouse are not excludable as part of the spousal privilege against testifying: "The declaration of a wife may be received as *res gestae* even where she would not be a competent witness against her husband." *State v. Pilcher*, 104 So. 717, 719 (La.1925).[1] Prohibitions against the introduction of other crimes and hearsay evidence do not apply to those crimes that were an integral or inseparable part (*res gestae*) of the the crime for which the defendant is being prosecuted. *See* La.Code Evid. art. 404 Comment (m); La.Code Evid. arts. 801-03.

> The doctrine of *res gestae* is broad and includes not only spontaneous utterances and declarations made before and after commission of a crime but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after commission of the crime if a continuous chain of events is evident under the circumstances.

*State v. Narcisse*, 512 So.2d 565, 568 (La.1987). The facts of the instant case show that Mrs. Barfield called Deputy Sasser to report not only the instant crime but also additional offenses of which she was the victim. The call was near the time Defendant fled from home because, as soon as Deputy Sasser's conversation with Mrs. Barfield ended, the company monitoring Defendant's home incarceration notified Deputy Sasser that its system alerted. Moreover, the content of Mrs. Barfield's statements directly pertained to what she heard and observed immediately prior to and during Defendant's escape. Thus, the district court did not err in finding that Mrs. Barfield's statements to Deputy Sasser were not excluded by Mrs. Barfield asserting her privilege to not testify against Defendant.

---

[1]The supreme court subsequently determined that the statement made by Mrs. Pilcher did not constitute a *res gestae* statement; however, it did not reverse its ruling that the spousal exception did not exclude *res gestae* statements. *State v. Narcisse*, 512 So.2d 565, 567-69 (La.1987) (citing *State v. Brown*, 109 So. 394 (La.1926)).

At trial, Defendant also contended that the admission into evidence of Mrs. Barfield's prior statements in reporting Defendant's escape violated the Confrontation Clause. Defendant supports this argument by citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), and the line of cases following the *Crawford* decision. The supreme court has explained that the *Crawford* decision distinguished between testimonial statements and nontestimonial statements made by unavailable witnesses and altered the criteria for admitting testimonial statements by witnesses unavailable at trial:

> Traditionally, for purposes of the Confrontation Clause, all hearsay statements were admissible if: (1) the declarant was unavailable to testify; and (2) the statement fell under a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). However, in *Crawford*, the United States Supreme Court overruled *Roberts* insofar as it applies to out-of-court statements that are "testimonial" in nature. The Court held that the adequate "indicia of reliability" standard set forth in *Roberts* is too amorphous to adequately prevent admission of "core testimonial statements that the Confrontation Clause plainly meant to exclude." *Crawford*, 541 U.S. at 63, 124 S.Ct. at 1371.

> The *Crawford* Court drew a distinction between testimonial and non-testimonial hearsay and noted that non-testimonial hearsay is admissible when both prongs of *Roberts* are satisfied, regardless of whether the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 63, 124 S.Ct. at 1371. On the other hand, the Court held that testimonial hearsay statements may be admitted as evidence at a criminal trial only when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant. *Id*. The Court also declined to provide a comprehensive definition of "testimonial," observing that, "whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*., 541 U.S. at 68. "These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id*.

*State v. Kennedy*, 05-1981, pp. 25-26 (La. 5/22/07), 957 So.2d 757, 775-76, *reversed in part on other grounds*, 554 U.S. 407, 128 S.Ct. 2641 (2008) (footnote omitted).

20

In *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74 (2006), the Supreme Court set forth the general distinction between testimonial and nontestimonial statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

In *Davis*, the victim called 911 and reported that her boyfriend had been hitting her, and during the conversation wherein the 911 operator asked the victim questions, the defendant left the premises. The victim did not appear for trial, and the prosecution introduced the 911 recording over the defense's objection that the evidence violated the defendant's right to confront his accuser. Finding that the purpose of the 911 call was to "describe current circumstances requiring police assistance," and that the purpose of the operator's questions had been "to enable police assistance to meet an ongoing emergency, the Supreme Court held that the victim's statements to the 911 operator did not constitute testimony. *Id*. at 2276-77, 827-28.

As previously discussed, Mrs. Barfield called Deputy Sasser to report not only the instant crime but also additional offenses of which she was the victim. The call was near in time to Defendant's flight from home because almost immediately after Deputy Sasser's conversation with Mrs. Barfield ended, the company monitoring Defendant's home incarceration notified Deputy Sasser that its system alerted. Moreover, it is undisputed that Mrs. Barfield was not available to testify at trial. Therefore, as Mrs. Barfield's report to Deputy Sasser is analogous to the 911 call made in *Davis*, the statement was nontestimonial in

21

nature; therefore, its admission into evidence did not violation the Confrontation Clause.

## ASSIGNMENT OF ERROR NUMBER FIVE

Defendant urges, "The trial court erred in permitting the witnesses to testify as to what they viewed on the videotape recorded at the Dollar General Store when they failed to preserve the videotape for inspection by the defense or for evidence at trial."

The State replies that the testimonies given by Chief Gonzales and Ms. Guffy were both properly admitted; the evidence did not constitute other crimes evidence as it was limited to showing that Defendant removed his ankle transmitter.

The State is required to preserve evidence under certain circumstances. Defendants have the right to have their own experts examine certain types of evidence, perform independent analyses, and formulate independent opinions based on that examination and analysis. *State v. Clark*, 414 So.2d 737 (La.1982) and *State v. Ferguson*, 09-1422, (La.App. 4 Cir. 12/15/10), 54 So.3d 152, 168, *writ denied*, 11-135 (La. 6/3/11), 63 So.3d 1008. However, Defendant neither alleges that this was the type of evidence needing evaluation by an expert nor claims that he was deprived of the right to expert evaluation.

The State is also required to preserve exculpatory evidence. *State v. Horton*, 09-250 (La.App. 5 Cir. 10/27/09), 28 So.3d 370. However, Defendant does not urge that the video footage would have been exculpatory or that the State acted in bad faith.

As Defendant fails to either explain the basis of his contention that discussion of the video footage should have been inadmissible because the actual footage was not preserved or cite legal principles applicable to the issue, Defendant fails to raise a claim under which he would be entitled to relief.

Defendant further presents issues neither preserved by objection at trial nor included in the assignment of error. He asserts that the discussion of the video footage arguably constituted evidence of other crimes, which the defense was unable to refute. Defendant adds that no testimony should have been allowed about the condition of the ankle strap because the State failed to preserve it for inspection by the defense. "Any irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim.P. art. 841. Thus, these remaining issues are not properly before this court.

## ASSIGNMENT OF ERROR NUMBER SIX

Defendant complains that his sentence is excessive: "The trial court failed to sufficiently consider the factors set forth in La.Code Crim.P. art. 894.1, resulting in the imposition of an excessive sentence in violation of the Eighth Amendment of the Constitution of the United States." Defendant urges that the trial court should have considered the sentence originally imposed, the statutory sentencing provisions, the pre-trial posture of Defendant's escape, the penalty provision for tampering with an electronic monitoring device, the fact that Defendant was not being held under house arrest as a result of a conviction, the fact that Defendant missed no court dates as mitigating factors in the case, and the length of time between the current offense and the predicate felony. Defendant asserts that the sentencing court should not have considered charges pending against Defendant when it sentenced him. The State responds that Defendant was not sentenced to the maximum penalty for the offense, and that Defendant's sentence is not excessive when one considers the facts of the case and similar jurisprudence.

The sentencing court pronounced the following reasons for Defendant's original penalty:

I have . . . reviewed the . . . sentencing guidelines and . . . .

. . . .

23

. . . I know that there is a mandatory minimum in this situation, but I have to note that I believe there is an undue risk that during the period of any suspended sentence or probation, the defendant would commit another crime. . . . I certainly think a lesser sentence would depreciate the seriousness of the crime when you look at . . . Mr. Barfield's record. He has a previous conviction for carnal knowledge of a juvenile, aggravated battery and sexual battery. . . . [T]his time he was arrested for false imprisonment with a weapon, simple battery and aggravated assault. Not long after his arrest, he was given the opportunity to participate in the house arrest program in an attempt to keep him out of jail pending trial, and during that period of freedom, he engaged in a simple escape. I do accept what the jury found as fact.

Defendant's habitual offender hearing occurred thereafter, and the trial court gave the following reasons:

I have before me evidence that he is a habitual offender. I have a stipulation concerning . . . the habitual offender status if I were to find him an habitual offender, which I do. I note that in the previous convictions . . . they all involve either sex crimes or crimes of violence. I note that . . . the escape from house arrest occurred while he was getting another chance to remain free pending a charge of false imprisonment with a weapon, simple battery and aggravated assault. Based upon the previous criminal record, which I did consider at the first sentencing, I do find it appropriate to sentence Mr. Barfield to eight years as a second felony offender, and that would be without benefit of parole, probation or suspension of sentence.

Thereafter, the district court vacated Defendant's original sentence and restated the habitual offender penalty. Though Defendant filed a motion to reconsider his original penalty, he did not seek reconsideration of his habitual offender sentence.

As Defendant neither verbally moved for reconsideration of his habitual offender sentence nor filed a motion to reconsider his habitual offender sentence with the trial court alleging specific errors, he is not entitled to a review of his habitual offender sentence. La.Code Crim.P. art. 881.1(E). However, in the interest of justice, we choose to conduct a bare excessiveness review of Defendant's habitual offender penalty. *State v. Batiste*, 09-521 (La.App. 3 Cir.

12/9/09), 25 So.3d 981(citing *State v. Graves*, 01-156 (La.App. 3 Cir. 10/3/01),

798 So.2d 1090, *writ denied*, 02-29 (La. 10/14/02), 827 So.2d 420).

This court has previously discussed the standard for reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331 (citations omitted) (second alteration in original).

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061 (citations omitted). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

*Batiste*, 25 So.3d at 983.

Under La.R.S. 14:110(B)(3), "[a] person imprisoned, committed, or detained who commits the crime of simple escape . . . shall be imprisoned with or without hard labor for not less than two years nor more than five years; provided that such sentence shall not run concurrently with any other sentence." As a second felony offender with a conviction for an offense where the penalty is less than life imprisonment, Defendant is subject to the sentencing enhancement set forth by La.R.S. 15:529.1(A)(1), wherein "the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." Thus, the possible penalties in the instant case ranged from a minimum of two-and-a-half years to a maximum of ten years, which means that Defendant's eight-year sentence falls within the statutory penalty range and constitutes a high-range sentence.

The district court gave particularized reasons for the penalty it imposed: Defendant's past violent criminal history, Defendant's continuing criminal activity that involved both violence and the use of a firearm, the fact that Defendant committed the instant offense while being held pending trial on other crimes, and its belief that Defendant would continue to offend.

In *State v. Nunn*, 599 So.2d 462 (La.App. 2 Cir. 1992), the defendant was convicted of simple escape, found to be a multiple offender, and sentenced to nine years at hard labor based on his escape from a bus transporting him to a court appearance, flight on foot, and quick apprehension.[2] In sentencing the defendant, the trial court noted the defendant had prior convictions for simple burglary, simple battery, aggravated battery, and armed robbery. Additionally, the defendant had another aggravated battery charge pending against him at the time of his plea to simple escape. Based on these factors, the district court found the defendant to be

---

[2]The decision did not state which level of multiple offender; however, the sentencing range discussed in the opinion is the same as it is in the instant case.

26

a violent person, a menace to the community, and in need of correctional treatment. The sentencing court further stated that a lesser sentence would deprecate the seriousness of the offense and that the defendant must have or should have known that his actions would create a risk to public safety. On appeal, the defendant claimed his sentence was excessive. The second circuit found that the nine-year sentence was "amply supported by the record" and did not constitute "a purposeless and needless imposition of pain and suffering." *Id*. at 465.

As in *Nunn*, Defendant has multiple prior felony convictions for violent offenses and has shown a predilection for continuing his violent behavior. The State originally billed Defendant as a fourth felony offender. Though Defendant could have been found to be a fourth felony offender, which carries a mandatory life sentence, Defendant benefitted from a stipulation between the prosecution and the defense that his three prior felony convictions were to be considered one felony conviction for the purposes of the habitual offender hearing.[3]

Defendant's eight-year sentence is long and harsh and a shorter sentence might have been more appropriate. This, though, is not the decision we are called upon to make. We can only reduce Defendant's sentence if we find a manifest abuse of discretion. Considering the sentencing court's reasoning, and the beneficial stipulation between the parties, we find no such abuse.

## DECREE

The conviction is affirmed. We amend the Defendant's sentence to delete the denial of parole eligibility and instruct the trial court to make an entry in the minutes reflecting this change. The sentence is affirmed as amended. Finally, we remand the matter to the trial court solely for clarification of the sentence regarding whether the sentence is to be served with or without hard labor.

---

[3]Although the record shows Defendant pled guilty to each of his three prior felony offenses on the same date, Defendant had different arrest dates and different docket numbers for his three prior felonies, which indicates that the three prior felonies were separate and distinct from each other.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**