PER CURIAM.
| j Granted. The ruling of the trial court granting the defendant’s motion for a special jury instruction regarding surveillance videos is reversed and this case is remanded for further proceedings.
This matter involves a shooting in front of a seafood market located in a strip mall. Following the shooting, investigating officers sought to review surveillance videos from eight area businesses, including the seafood market. The video from only one of the area businesses was provided to the defendant during discovery. Of the other seven area businesses, three did not have videos available, and the video-surveillance equipment at the seafood market was not operating at the time of the incident. The videos of the other three area businesses were viewed by an investigating officer, but were not collected because the officer determined the videos did not contain anything that would assist in the follow-up investigation of the case. Due to the state’s failure to produce all of the video-surveillance footage reviewed by the investigating officers on the day of the homicide, the trial court granted the defendant’s request that the jury be given the missing evidence instruction.
ls>“A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent.” La. C.Cr.P. art. 807. “A legal presumption relieves him in whose favor it exists from the necessity of any proof; ... such is the presumption ... that evidence under the control of a party and not produced by him was not produced because it would not have aided him.... ” La. R.S. 15:432.
*40 Pursuant to La. R.S. 15:432, a party’s entitlement to a legal presumption generally focuses on whether the item or witness was “under the control” of a party. See State v. Arnaud, 412 So.2d 1013, 1019-20 (La.1982); see also State v. Barfield, 11-515, pp. 15-16 (La.App. 3 Cir. 11/23/11), 81 So.3d 760, 772-73, writ denied, 11-2818 (La.4/13/12), 85 So.3d 1246; State v. Ballay, 99-906, pp. 20-21 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 129-30; State v. Ross, 97-0357, p. 6 (La.App. 4 Cir. 12/10/97), 704 So.2d 920, 923-24. Where the witness or item is “equally available to both the state and the defense,” the evidence is not “under the control” of either party. See State v. Simms, 381 So.2d 472, 476 (La.1980). Furthermore, this court has previously stated that although the state could have evidence “under its control” based on opportunity, if the state does not take the evidence into its custody, the presumption of La. R.S. 15:432 does not apply and the requirements of La. C.Cr.P. art. 807 are not satisfied. See Arnaud, 412 So.2d at 1020;[1] Barfield, 11-0515 at 17, 81 So.3d at 772. Furthermore, where there is no surveillance video, the presumption of La. R.S. 15:432 does not come into play. See Ballay, 99-906 at 20-21, 757 So.2d at 129. The Arnaud court held that |s“[w]hether these items were produced or not goes to the weight of the evidence.” Arnaud, 412 So.2d at 1020.
Here, the lead detective, who visited the area businesses on the evening of the shooting to view surveillance video, stated that the video-surveillance equipment at the seafood market was not operating during the time in question. Thus, the state did not produce a surveillance video from the seafood market because none existed. Since the presumption of La. R.S. 15:432 is not applicable where there is no surveillance video, the defendant did not meet his burden of proving that his request for a missing evidence instruction was “wholly correct and pertinent” with respect to the nonexistent seafood market video. See La.C.Cr.P. art. 807; Ballay, 99-906 at 20-21, 757 So.2d at 129-30.
Three videos were viewed by another investigating officer, who had an opportunity to take them into state custody. However, he chose not to collect them because he believed the videos lacked evi-dentiary value. Therefore, the three viewed videos were not “under the control” of the state. Where the state could have evidence “under its control” based on opportunity, if the state does not take the evidence into its custody, the presumption of La. R.S. 15:432 does not apply and the requirements of La.C.Cr.P. art. 807 are not satisfied. See Arnaud, 412 So.2d at 1020; Barfield, 11-515 at 15-16, 81 So.3d at 772-73. Furthermore, because the three videos were under the control of the individual stores, such videos were equally available to both the state and the defendant.[2] Under the facts of this case, the presumption was not “wholly correct or pertinent” so as to require the trial court to give a special charge under La.C.Cr.P. art. 807.
*41 14Additionally, “the sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice.” Sloan v. U.S. Dep’t of Housing & Urban Dev., 236 F.3d 756, 762 (D.C.Cir.2001). There simply is no absolute duty to retain and to preserve all material that might be of conceivable evi-dentiary significance in a particular prosecution. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).[3] Furthermore, the discovery provisions of the Louisiana Code of Criminal Procedure and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), impose no obligation on the state to obtain records over which it has never had custody or control. Ross, 97-0357 at 6, 704 So.2d at 924, citing State v. Badeaux, 95-1563 (La.6/30/95), 657 So.2d 1306.[4]
Although the defendant filed a motion to preserve, that motion came five days after the videos in question had been viewed by the investigating officer. Therefore, at the time the decision was made not to take the videos into the state’s possession, the motion to preserve had not yet been filed, and the investigating officer could not know that such a motion would be filed immediately after the defendant’s arrest. Thus, the fact that the defendant subsequently filed a motion to preserve evidence does not require the state to preserve that which was viewed five days before and not collected based on the investigator officer’s finding of lack of evi-dentiary value.
Because the presumption requested by the defendant does not apply to any of the surveillance videos sought by him, we find that, absent a showing of bad | ¿faith by the state/investigating officers, the trial court abused its discretion in finding that the defendant was entitled to have the jury be given a special jury charge of the legal presumption that states “evidence under the control of a party and not produced by him was not produced because it would not have aided him” pursuant to La. R.S. 15:432.

. In Amaud, the investigating officer failed to retrieve items of alleged evidentiary value in a rape case (light bulb allegedly unscrewed by the defendant, bicycle allegedly used by the defendant, and telephone lines allegedly cut by the defendant) or to fingerprint any of these items. Arnaud, 412 So.2d at 1020.

. Documents and other tangible objects which may be helpful to the defense, but which are not within the custody of the state, are properly acquired through the mechanisms of compulsory process and not through pretrial discovery. State v. Badeaux, 95-1563 (La.6/30/95), 657 So.2d 1306, citing La. C.Cr.P. art. 731, et seq.

. The Court has "been unwilling to read the 'fundamental fairness' requirement of the Due Process Clause ... as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Youngblood, 488 U.S. at 58, 109 S.Ct. 333. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.” Id.

. Because the record in Ross showed that the state never had custody or control over surveillance videotapes, the court found the state had no obligation to produce them. Ross, 704 So.2d at 924.