| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **NO. 2024-KA-0530** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **GARY ALLEN** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

| | |
|---|---|
| <u>**CONSOLIDATED WITH:**</u> | <u>**CONSOLIDATED WITH:**</u> |
| **STATE OF LOUISIANA** | **NO. 2024-K-0749** |
| **VERSUS** | |
| **GARY ALLEN** | |

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 559-148, SECTION "D"
Judge Kimya M. Holmes
\* \* \* \* \* \*
**Judge Nakisha Ervin-Knott**
\* \* \* \* \* \*

(Court composed of Judge Karen K. Herman, Judge Nakisha Ervin-Knott, Judge Monique G. Morial)

Jason R. Williams
District Attorney
Brad Scott
Chief of Appeals
Thomas Frederick
Assistant District Attorney
Parish of Orleans
619 S. White St.,
New Orleans, LA 70119

      COUNSEL FOR STATE/APPELLEE

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073

Gary Allen #738693

David Wade Correctional Center
670 Bell Hill Road
Homer, LA 71040

COUNSEL FOR DEFENDANT/APPELLANT; PRO SE DEFENDANT

**AFFIRMED IN PART; VACATED IN PART; REMANDED**
**December 22, 2025**

Defendant, Gary Allen, appeals his eleven convictions for various crimes, and the State seeks supervisory review of the district court's ruling on its request to charge Defendant as a habitual offender. For the following reasons, we affirm Defendant's convictions, affirm his sentence on Count 1, vacate the remainder of his sentences, and remand for further proceedings.

## PROCEDURAL HISTORY

This case has a complicated history. It arises from three separate incidents affecting two different victims—M.G.[1] and Glenard Carter ("Mr. Carter").[2] In brief, the alleged events are as follows:

**March 16, 2022**: Defendant is accused of attempting to break into M.G.'s apartment and shooting her vehicle;

**June 18, 2022**: Defendant is accused of kidnapping M.G. and assaulting her with his gun; and

**July 14, 2022**: Defendant is accused of murdering Mr. Carter after Mr. Carter is found dead with multiple gunshot wounds in the 1200 block of St. Phillip Street.

---

[1] Both the State and appellate defense counsel refer to M.G. by her initials in their briefing. We will also use M.G.'s initials in order to protect the confidentiality of her identity.

[2] At trial, the jury heard evidence regarding other counts related to another victim and incident. However, Defendant was not found guilty of those counts, and those counts are not contested on this appeal.

The prosecution of this case began on September 28, 2022 when the State filed a bill of indictment charging Defendant with eleven different crimes. Throughout the course of the proceedings, the State filed to *nolle prosequi* its case against Defendant twice, and it re-indicted him three separate times. The State filed its final indictment on August 24, 2023, charging Defendant with a total of seventeen different crimes. Defendant filed a motion to quash the indictment alleging that the seventeen counts were improperly joined and the State abused its prosecutorial power. The district court denied the motion to quash, and the matter proceeded to a four-day jury trial on April 23, 2024.

At the conclusion of the trial, Defendant was found guilty on the following counts:

- **Count 1**: Second Degree Murder of Glenard Carter in violation of La. R.S. 14:30.1 (July 14, 2022);
- **Count 2**: Obstruction of Justice in violation of La. R.S. 14:130.1 (July 14, 2022);
- **Count 3**: Possession of a Firearm by a Felon in violation of La. R.S. 14:95.1 (July 14, 2022);
- **Count 4**: Aggravated Assault on M.G. with a Firearm in violation of La. R.S 14:37.4 (June 18, 2022);
- **Count 5**: Second Degree Kidnapping of M.G. with a Firearm in violation of La. R.S. 14:44.1 (June 18, 2022);
- **Count 6**: Aggravated Battery on M.G.in violation of La. R.S. 14:34 (June 18, 2022);[3]
- **Count 8**: Possession of a Firearm by a Felon in violation of La. R.S. 14:95.1 (June 18, 2022);
- **Count 9**: Illegal Use of a Weapon in violation of La. R.S. 14:94(A) (March 16, 2022);
- **Count 10**: Simple Criminal Damage to M.G.'s Property in violation of La. R.S. 14:56(B)(2) (March 16, 2022);
- **Count 11**: Possession of a Firearm by a Felon in violation of La. R.S. 14:95.1 (March 16, 2022); and
- **Count 17**: Possession of a Firearm by Felon in violation of La. R.S. 14:95.1 (August 31, 2022).

---

[3] The State originally charged Defendant with attempted second degree murder on Count 6. However, the jury returned a responsive verdict for aggravated battery instead.

The district court sentenced Defendant on June 4, 2024. Subsequently, the State filed to charge Defendant as a habitual offender. In response, Defendant filed a motion to quash the multiple bill of indictment, which the district court denied. On October 9, 2024, the district court held a multiple bill hearing and adjudicated Defendant as a second felony offender on counts 2, 4, 5, 9, and 10. Defendant sought a timely appeal of his convictions, and the State sought a timely writ as to the habitual offender ruling. For the sake of judicial efficiency, Defendant's appeal and the State's writ application have been consolidated.

**ERRORS PATENT**

Prior to reviewing the merits of this appeal, we are tasked with examining the record for any errors patent in accordance with La. C.Cr.P. art. 920.[4] Our review of the record reveals one patent error. When sentencing Defendant on the felon in possession of a firearm convictions, the district court failed to comply with the sentencing requirements under the applicable statute.

Louisiana Revised Statute 14:95.1(B)(1) provides:

> Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence **and** be fined not less than one thousand dollars nor more than five thousand dollars.

(Emphasis added). A review of the record reveals that the district court failed to impose the mandatory fine under the statute. For this reason, along with the reasons set forth later in this opinion, we vacate Defendant's sentences under La. R.S. 14:95.1 and remand those sentences with instructions for the district court to impose the mandatory fine.

---

[4] An error patent is an error "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2).

**ASSIGNMENTS OF ERROR**

*Defendant's Appeal*[5]

1. The district court erred in denying Defendant's motion to quash based upon the State's abuse of prosecutorial power.

2. The district court erred in denying Defendant's motion to quash based upon the improper joinder of offenses.

3. The district court erred in admitting the March 16, 2022 and June 18, 2022 911 calls as they constituted inadmissible hearsay.

4. The district court erred in excluding evidence of M.G.'s prior conviction.

5. The district court erred in failing to sustain the defense's objections to the prosecution's inappropriate comments during rebuttal closing argument.

6. The evidence presented at trial was insufficient to uphold Defendant's convictions.

7. The district court erred in denying the defense's request for a jury instruction regarding missing witnesses and evidence.

*State's Writ Application*

1. The district court erred in failing to adjudicate Defendant as a third habitual offender as to Counts 2, 4, 5, 9, and 10.

2. The district court erred in failing to adjudicate Defendant as a second habitual offender as to Counts 3, 8, 11, and 17.

**DISCUSSION**

*Defense Assignment of Error 6: Whether the evidence was sufficient to convict Defendant*

When an appellant raises the sufficiency of the evidence as an error on appeal, the appellate court must address that assignment of error first. *State v. McDonough*, 2022-0628, p. 21 (La. App. 4 Cir. 10/27/23), 376 So. 3d 1003, 1019 (citation omitted). When reviewing a sufficiency of the evidence claim, the

---

[5] Although Defendant is represented by appellate counsel, he also filed a *pro se* brief for our consideration. The majority of his assignments of error overlap with those assigned by his counsel. For the sake of ease, we have consolidated the duplicate assignments of error.

appellate court must determine "whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all of the elements of the offense had been proven beyond a reasonable doubt." *State v. Groves*, 2020-0450, p. 21 (La. App. 4 Cir. 6/10/21), 323 So. 3d 957, 971 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979)); *see also State v. Tate*, 2001-1658, p. 4 (La. 5/20/03), 851 So. 2d 921, 928. Thus, after reviewing the evidence in a light most favorable to the State, we must question whether **any** rational trier of fact could have found that the State proved all the elements of the charged crime beyond a reasonable doubt. *Id*. at pp. 21-22, 323 So. 3d at 971 (emphasis added). If rational triers of fact could disagree as to the interpretation of the evidence, then the interpretation most favorable to the prosecution must be adopted. *State v. Dukes*, 2019-0172, pp. 7-8 (La. App. 4 Cir. 10/2/19), 281 So. 3d 745, 752 (citing *State v. Mussall*, 523 So. 2d 1305, 1310 (La. 1988)). "Absent [an] internal contradiction or irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the fact finder, is sufficient to support a factual conclusion." *State v. Marshall*, 2004-3139, p. 9 (La. 11/29/06), 943 So. 2d 362, 369 (citation omitted). This standard applies when reviewing both the direct and circumstantial evidence presented in a case.[6] *McDonough*, 2022-0628, p. 22, 376 So. 3d at 1020. Keeping the above standard in mind, we now analyze Defendant's convictions.

### i.    Counts 1-2: Second Degree Murder; Obstruction of Justice

Counts 1-2 arise from the July 14, 2022 murder of Mr. Carter.

---

[6] When a conviction is based on circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence in order for the conviction to be upheld. *McDonough*, 2022-0628, pp. 22-23, 376 So. 3d at 1020 (quoting La. R.S. 15:438).

Count 1 charges Defendant with the second degree murder of Mr. Carter. Second degree murder is defined as the killing of a human being when the perpetrator has the specific intent to kill or inflict great bodily harm on the victim. La. R.S. 14:30.1(A)(1). A perpetrator is deemed to have possessed specific intent when the circumstances indicate that he "actively desired the prescribed criminal consequences to follow his act . . . ." La. R.S. 14:10(1). "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *State v. Scott*, 2023-0022, p. 9 (La. App. 4 Cir. 8/30/23), 372 So. 3d 42, 51 (quoting *State v. Bishop*, 2001-2548, p. 4 (La. 1/14/03), 835 So. 2d 434, 437). In order to sustain a conviction for second degree murder, the State must prove beyond a reasonable doubt that the defendant "(1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death." *Id*. (citation omitted).

NOPD Detective Michael Poluikis testified that he was the lead detective investigating the murder of Mr. Carter. As part of his investigation, he responded to the scene of the crime on July 14, 2022, after receiving a report that a homicide had occurred in 1200 block of St. Phillip Street. At the scene, he spoke with Thaddeus Jones ("Mr. Jones"), who witnessed the shooting.[7] Although Mr. Jones had not seen the perpetrator's face, he described the perpetrator as wearing a white T-shirt with an orange head covering and driving a small SUV. Through his investigation, Det. Poluikis obtained various surveillance footage from the LA Express gas station located at the corner of St. Claude Ave. and Lizardi St., just a few miles from the scene of the murder. The footage depicts Defendant wearing a white T-shirt and orange head covering, driving a small Mazda SUV, and

---

[7] Mr. Jones also testified at trial, and his testimony corroborated Det. Poluikis' account.

interacting with Mr. Carter approximately an hour before the murder. The two men have several interactions at the gas station before leaving together. Notably, Det. Poluiski testified that this surveillance footage is the last time Mr. Carter was seen prior to his murder.

The State also presented the testimony of Azerleat Forrest ("Ms. Forrest"), who confirmed that she owned a 2008 Mazda SUV. She testified that on the night of the homicide Defendant drove her to her shift at the LA Express gas station and borrowed her car while she was working. Ms. Forrest admitted that she noticed bullet holes in her vehicle sometime after Defendant returned it to her, but she had assumed the car sustained the damage when she was in New Orleans East.

Dr. Cynthia Gardner, who was qualified as an expert in the field of forensic pathology, performed the autopsy of Mr. Carter. She concluded he had died from multiple, "very severe" gunshot wounds. Further, Sean McElrath from the Forensic Firearm's unit for NOPD's Crime Lab testified as an expert in firearms, tool marks examination, and ballistics comparison. Mr. McElrath performed ballistic testing on the evidence collected from all three incidents in this case, and he concluded that the same firearm that had been used against M.G. in the prior incidents had also been used to murder Mr. Carter.

Looking at all this evidence in its totality, we do not find the jury's conclusion that Defendant committed second degree murder to be unreasonable. The surveillance footage shown confirms that Defendant had been with Mr. Carter just an hour before his murder took place, and the two can be seen leaving the gas station together. Further, Defendant had been wearing the same clothing Mr. Jones described the shooter wearing and driving a similar vehicle as well. That vehicle was then later discovered to have been damaged by bullets. Finally, the murder

weapon used to kill Mr. Carter is the same gun attributed to the Defendant in the commission of the crimes against M.G. In light of all this, we find that a reasonable juror could find that Defendant committed the murder; thus, the evidence was sufficient to convict Defendant on Count 1.

Count 2 charges Defendant with obstructing the investigation into Mr. Carter's murder. Obstruction of justice is defined as the "[t]ampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding." La. R.S. 14:130.1(A)(1). This includes the removal of any object from the location of an incident which the perpetrator knew or had good reason to believe would be the subject of any investigation. La. R.S. 14:130.1(A)(1)(a). The State brought this count against Defendant for removing the murder weapon from the scene of the crime.

Clearly, a significant crime—the murder of man—occurred on July 14, 2022. Common sense dictates that an investigation into the murder would occur and that investigators would look for the murder weapon. However, the weapon was not at the scene of the crime. Given this, along with the evidence linking Defendant as the perpetrator and fleeing from the scene, we find the evidence presented sufficient for a reasonable juror to convict Defendant on Count 2.

### ii. Counts 4-6: Aggravated Assault with a Firearm; Second Degree Kidnapping; and Aggravated Battery

Counts 4-6 relate to the June 18, 2022 incident wherein Defendant is accused of kidnapping and assaulting M.G.

M.G. did not testify at trial. Instead, the State introduced the audio recording of the 911 call M.G. made after the incident.[8] In that audio recording, the jury heard M.G. tell the 911 operator that Defendant had run her off the road while she was driving down Chef Menteur Highway. She relayed that he dragged her from the vehicle, pistol whipped her, forced her back into the car, shot at her, and attempted to drive them to another location. M.G. then articulated that she was able to kick Defendant out of the car somewhere around St. Claude Ave. and that she had driven herself to the Dollar General on Earhart Blvd. before calling 911. Although M.G. stated that she was bleeding, she confirmed that she had not been shot. Throughout the call, M.G. sounds frightened and distressed.

The jury also heard from Detective Jack Wilson, the officer who responded to M.G.'s 911 call. Although the crime initially happened in New Orleans East, Det. Wilson met and interviewed M.G. at the Dollar General located on Earhart Blvd. He testified to seeing bruises on her face, which was corroborated by his body-worn camera footage of the interview. He further testified to searching M.G.'s car, wherein he found a magazine with live rounds, a 9-mm bullet casing, and Defendant's I.D. As noted previously, Mr. McElrath tested the ballistic evidence collected and concluded that the same firearm that had been used against M.G. in this incident had also been used against her previously, and then later to murder Mr. Carter.

Count 4 charges Defendant with aggravated assault with a firearm on M.G. An aggravated assault of a firearm is defined as an assault committed with a

---

[8] Defendant objected to the introduction of the 911 call, and the district court overruled that objection. We will discuss whether the district court properly admitted the 911 call in Defense's Assignment of Error No. 3. However, when analyzing the sufficiency of the evidence, we are bound to review all the evidence regardless of whether it may have been erroneously admitted. *See State v. Hearold*, 603 So. 2d 731, 734 (La. 1992); *see also State v. Kenny*, 2011-1819, p. 6 (La. App. 4 Cir. 5/2913), 116 So. 3d 992, 996).

firearm. La. R.S. 14:37.4(A). An assault is "an attempt to commit battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36.[9] In order to sustain a conviction for assault, the State must prove (1) the defendant had the general intent to scare the victim; (2) the defendant's conduct was of the type to raise a reasonable apprehension of bodily harm; and (3) the victim's resulting apprehension of a battery. *State v. Brown*, 2017-0124, p. 6 (La. App. 4 Cir. 12/12/17), 234 So. 3d 978, 982 (citing *State v. De Gruy*, 2016-0891, p. 12 (La. App. 4 Cir. 4/5/17), 215 So. 3d 723, 730). In M.G.'s 911 call, she distressingly relays that she was beaten with a pistol and that Defendant had shot at her. Her statements were corroborated by Det. Wilson in his observation of her injuries and discovery of bullets in her car. Given this, we find the evidence sufficient for the jury to find Defendant committed an aggravated assault with a firearm on Count 4.

Count 5 charges Defendant with the second degree kidnapping of M.G. Second degree kidnapping is the imprisoning or forcible seizure of a person while the defendant is armed with a dangerous weapon. La. R.S. 14:44.1(A)(5) and (B)(1) and (3). M.G.'s phone call establishes the elements of this crime. M.G. relayed that Defendant had beaten her, attempted to shoot her, and forcibly trapped her in her car at gunpoint. Furthermore, Det. Wilson found evidence of the use of a firearm in M.G.'s vehicle. We find this evidence sufficient for the jury to convict the Defendant of the second degree kidnapping of M.G. on Count 5.

Lastly, Count 6 originally charged Defendant with the attempted second degree murder of M.G. However, at the conclusion of the trial, the jury returned a

---

[9] A battery is the "the intentional use of force or violence upon the person of another...." La. R.S. 14:33.

10

responsive verdict for aggravated battery instead. Aggravated battery is a battery that is committed with a dangerous weapon. La. R.S. 14:34. A battery is defined as "the intentional use of force or violence upon the person of another . . . ." La. R.S. 14:33. Many of the elements for this Count overlap with the elements of Count 4. Therefore, for similar reasons, we find the evidence presented was sufficient for the jury to find Defendant guilty of committing an aggravated battery on Count 6.

### iii.    Counts 9-10: Illegal Use of a Weapon; Simple Damage to Property

Counts 9 and 10 arise from the March 16, 2022 incident wherein Defendant is accused of attempting to break into M.G.'s apartment and shooting her car.

Count 9 charges Defendant with the illegal use of a weapon. Louisiana Revised Statute 14:94(A) defines the illegal use of a weapon as "the intentional or criminally negligent discharging of any firearm . . . where it is foreseeable that it may result in death or great bodily harm to a human being." Thus, in order to convict a defendant, the State must prove that "(1) that the defendant intentionally, or through criminal negligence, discharged a firearm [and] (2) that it was foreseeable that it may result in death or great bodily harm to a human being. . . ." *State v. Contreras*, 2017-0735, p. 9 (La. App. 4 Cir. 5/30/18), 247 So. 3d 858, 867 (discussing the enhanced offense under La. R.S. 14:94(F)). Count 10 charges Defendant with simple criminal damage to M.G.'s vehicle. Simple criminal damage to property is defined as "the intentional damaging of any property of another, without the consent of the owner . . . by any means other than fire or explosion." La. R.S. 14:56(A)(1).

11

At trial, the State introduced the testimony of D.T.[10] D.T., a friend of M.G., testified that the two were on the phone when she heard banging on M.G.'s door and gunshots. The phone hung up, and D.T. called 911 out of concern for her friend's safety. Afterwards, she went to M.G.'s apartment and noticed holes in her friend's car. During the trial, the State played the audio recording of D.T.'s 911 call to the jury. Therein, she tells the operator she was just on the phone with M.G. when M.G.'s ex-boyfriend started banging on her door and shooting. D.T. identifies Defendant as the perpetrator to the operator.[11]

The State also offered the testimony of NOPD Officer Bryan Rojas, who testified that he responded to the scene on March 16, 2022 after the police department had received calls about a shooting. When he arrived, he noticed M.G.'s car had been shot up, and there were multiple bullet casings at the scene, which were collected and sent to evidence. Once again, Mr. McElrath tested the evidence collected and concluded that the firearm that had been used in this incident matched the ballistics to the weapon that had been used in the kidnapping incident and the murder of Mr. Carter.

We find the above to be sufficient for the jury to convict Defendant of both the illegal use of a firearm and simple damage to M.G.'s vehicle. The testimony establishes that Defendant was attempting to get inside M.G.'s apartment when he discharged the firearm multiple times, such that D.T. called the police out of concern for her friend's safety. Further, both D.T. and Officer Rojas observed the

---

[10] Similar to M.G., both the State and appellate defense counsel refer to D.T. by her initials in their briefing. We will also use D.T.'s initials in order to protect the confidentiality of her identity.

[11] The State also played a 911 recording from an unidentified caller reporting a shooting in the area.

bullet holes and damage to M.G.'s vehicle. Therefore, we find the evidence sufficient to convict Defendant on Counts 9 and 10.

### iv.  Counts 3, 8, 11, 17: Possession of a Firearm by a Felon

Louisiana Revised Statute 14:95.1(A)(1) provides, in pertinent part, "It is unlawful for any person who has been convicted of . . . a crime of violence as defined in R.S. 14:2(B) . . . to possess a firearm or carry a concealed weapon." In order to sustain a conviction under this statute, the State must prove that the defendant (1) possessed a firearm; (2) was previously convicted of an enumerated felony; (3) possessed the firearm within ten years of the previous conviction; and (4) had the general intent to commit the crime. *State v. Scott*, 2013-0321, p. 8 (La. App. 4 Cir. 2/26/14), 136 So. 3d 383, 389 (citation omitted). "The element of possession is satisfied by establishing the defendant had either actual or constructive possession." *State v. Beaulieu*, 2012-0735, p. 16 (La. App. 4 Cir. 8/7/13), 122 So. 3d 1050, 1061 (citation omitted). "Constructive possession exists if a defendant has dominion and control over a weapon even if it is only temporary in nature and even if the control is shared." *Id*. (citations omitted). Furthermore, a defendant possesses general intent "when the circumstances indicate that the defendant, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." *Id*. (quoting La. R.S. 14:10(2)).

Turning to the facts of this case, Defendant was convicted on four counts of being a felon in possession of a firearm. NOPD Officer Kevin Bell's[12] testimony at trial established that Defendant had been convicted of aggravated battery in

---

[12] Officer Kevin Bell was accepted by the district court as an expert in latent fingerprint examination and comparison.

November 2018, four years prior to the subject incidents, and thus was a felon under the definition of the statute. Counts 3, 8, and 11 relate to the use of a firearm in the three incidents that have already been discussed at length. As we have found the evidence sufficient to find Defendant as the perpetrator of those underlying crimes, we likewise find the evidence sufficient to convict him of being a felon in possession of a firearm on these counts.

Count 17 relates to the firearm found at the home of Defendant's mother during an authorized search of the residence on August 31, 2022. At trial, Det. Polukis, the lead detective investigating Mr. Carter's murder, testified that he authored a search warrant for Defendant's residence after his arrest. Sergeant Robert Barrere assisted with the search of the residence, and he testified that a 9-millimeter Smith and Wesson handgun was found wrapped in a t-shirt in the bathroom's toilet tank. On appeal, Defendant argues that the State failed to prove that he was aware of the gun in the house or that he had an intent to possess the gun. However, this argument is contradicted by Defendant in the jailhouse phone calls that were played for the jury. Two calls were played from the day the search warrant was executed. The first was to Defendant's mother, who informed him that a gun was found during the police's search of the home. The second was to an unidentified individual, whom Defendant informed that the police had found the gun. Taking all of this together—Defendant's phone call admission and the hidden location of the gun at Defendant's residence—the jury could reasonably find Defendant guilty of being a felon in possession of a firearm. As a result, we find the evidence sufficient to convict Defendant on Count 17.

***Defense Assignment of Error No. 1: Whether the district court erred in denying the Defendant's motion to quash based on abuse of prosecutorial power***

Defendant's first assignment of error relates to the "Motion to Quash for Abuse of Prosecutorial Powers or Release Pursuant to La. C.Cr. P. art. 701" he filed on March 4, 2023. When a motion to quash is filed on the basis of a speedy trial violation or a *nolle prosequi* dismissal-reinstitution violation, the appellate court will review the district court's ruling under an abuse of discretion standard because the motion involves mixed issues of fact and law. *See State v. Harris*, 2019-0900, p. 5 (La. App. 4 Cir. 7/22/20), 302 So. 3d 1177, 1180-81 (quoting *State v. Trepagnier*, 2014-0808, p. 5, n. 3 (La. App. 4 Cir. 11/19/14), 154 So. 3d 670, 673).

The district attorney has the discretion to dismiss an indictment, and exercising that discretion does not necessarily bar the district attorney from reinstituting the prosecution after the fact. *State v. Smith*, 2024-0092, p. 5 (La. App. 4 Cir. 4/11/25), 414 So. 3d 927, 932 (citing La. C.Cr. P. arts. 691 and 693). Nevertheless, the State may not dismiss and reinstitute a prosecution if doing so would violate the defendant's right to a fair trial or his right to a speedy trial. *Id.* (quoting *State v. Brown*, 2011-0947, p. 5 (La. App. 4 Cir. 3/7/12), 88 So. 3d 662, 665). However, even if the State is found to have abused its prosecutorial authority, an indictment should not be quashed unless the defendant proves that the State's abusive exercise of its power actually violated his constitutional right to a fair trial. *State v. Hayes*, 2010-1538, p. 9 (La. App. 4 Cir. 9/1/11), 75 So. 3d 8, 14. The defendant cannot merely show that the State dismissed a prosecution because it believed the dismissal to be in its best interest. *Smith*, 2024-0092, p. 7, 414 So. 3d at 933 (quoting *State v. Papizan*, 2017-0028, p. 9 (La. App. 1 Cir. 11/2/17), 256

So. 3d 1091, 1098). Rather, the "record must establish that the [S]tate dismissed the prosecution for the purpose of imposing a significant disadvantage on the defendant, and, as a result, the defendant's right to a fair trial was substantially prejudiced." *Id.* (citation and internal quotations omitted). A motion to quash may be granted if "it is evident that the district attorney is flaunting his authority for reasons that show that he wants to favor the State *at the expense of the defendant* . . . ." *State v. Batiste*, 2005-1571, p. 5 (La. 10/17/06), 939 So. 2d 1245, 1249 (quoting *State v. Love*, 2000-3347, p. 14 (La. 5/23/03), 847 So. 2d 1198, 1209) (emphasis added).

The district court originally set this case to go to trial on August 21, 2023. Days prior to the trial, the State filed a motion to continue wherein it alleged that it has just received the ballistic firearm analysis from the NOPD Crime Lab.[13] On the day of trial, the State filed a *nolle prosequi* and dismissed its indictment prior to the district court ruling on its outstanding motion to continue. It reinstated the prosecution just days later. Thereafter, on March 4, 2024, the defense filed a motion to quash the new indictment.

In his motion to quash, Defendant argued that the State dismissed the charges to obtain an advantage because it had learned just prior to trial that one of the victims, M.G., was not cooperating and would not testify. Defendant accused the State of intentionally concealing this fact from the district court and the defense. However, the district court was not persuaded by this argument. In denying the motion to quash, the trial judge noted that she had not yet ruled on the

---

[13] The State noted in its motion that "[i]t would be in the interests of justice to allow the defense additional time to have their expert review the new ballistics report and file any pleadings so as to avoid any issues on appeal should this case result in a conviction." The State also filed a supplemental motion to continue on August 18, 2023, adding that it had just identified and interviewed Ms. Forrest and that it needed additional time for the NOPD Crime Lab to complete a ballistic analysis of Ms. Forrest's vehicle.

motion to continue when the State chose to enter the *nolle prosequi*. As a result, the trial judge reasoned, "I can't say, nor can you [defense] . . . speculate, as to why the State did what it did."

In reviewing Defendant's motion, we find that the district court did not abuse its discretion in denying the motion to quash. As noted by the district court, Defendant's motion merely assumes the State's purpose in filing to *nolle prosequi* its prior case. Although Defendant argues the State's purpose was to avoid trial, the district court had not yet ruled on the continuance. More importantly, even assuming for the sake of argument that the State did flaunt its authority, Defendant failed to establish in his motion as to how he was actually prejudiced by the *nolle prosequi*. Defendant does not argue that his ability to prepare a defense was hindered by the State's *nolle prosequi*, and he is silent as to how his case was prejudiced. For these reasons, we do not find that the district court erred in denying the motion to quash for abuse of prosecutorial power.

### *Defense Assignment of Error No. 2: Whether the district court erred in denying Defendant's motion to quash based on improper joinder of offenses*

Defendant's second assignment of error relates to the "Motion to Quash for Improper Joinder" that he filed on April 22, 2024. Although the pleading is styled as a motion to quash, Defendant requested that the district court sever the offenses in his seventeen count indictment and order separate trials.

Article 493 of the Louisiana Code of Criminal Procedure allows for multiple offenses to be charged in the same indictment if those offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan . . . ." Yet, if prejudice would result by the joinder, then "the court may order

17

separate trials, grant a severance of offenses, or provide whatever other relief justice requires." La. C.Cr. P. art. 495.1. The district court has great discretion in deciding whether to grant a severance, and the appellate court reviews its ruling for an abuse of that discretion. *State v. Deruise*, 1998-0541, p. 7 (La. 4/3/01), 802 So. 2d 1224, 1232 (*State v. Brooks*, 541 So. 2d 801, 804 (La.1989)). The party seeking the severance bears the burden of proving the necessity for the severance. *State v. Jones*, 2016-0122, p. 8 (La. App. 4 Cir. 10/5/16), 203 So. 3d 344, 350 (citation omitted). The mover bears a heavy burden of proving the prejudicial grounds for the severance, and he is required to rely on factual, not conclusory, allegations to meet this burden. *State v. Dabney*, 2015-0001, pp. 16-17 (La. App. 4 Cir. 9/9/15), 176 So. 3d 515, 526 (quoting *State v. Davis*, 1992-1623 (La. 5/23/94), 637 So. 2d 1012, 1019).

When determining whether a joinder of offenses will cause prejudice, the district court must "weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources." *State v. Lee*, 1999-1404, p. 6 (La. App. 4 Cir. 5/17/00), 764 So. 2d 1122, 1126 (citation omitted). The following factors should guide such a decision: " [1] whether the jury would be confused by the various counts; [2] whether the jury would be able to segregate the various charges and evidence; [3] whether the defendant could be confounded in presenting his various defenses; [4] whether the crimes charged would be used by the jury to infer a criminal disposition; and [5] finally whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile." *Id*. (quoting *State v. Washington*, 386 So. 2d 1368, 1371 (La. 1980)). Yet, when the evidence for each offense "is relatively simple and distinct, so that the jury can easily keep the evidence of each

offense separate in its deliberations" then there is no prejudicial effect by the joinder. *Jones*, 2016-0122, p. 9, 203 So. 3d at 350 (citation omitted).

The final indictment in this case ultimately charged Defendant with seventeen counts involving various alleged crimes occurring on several different dates at several different locations and involving three different victims.[14] Defendant argued in his motion to quash that the cumulative evidence from each count would likely influence the verdict of the other counts. However, this did not happen as Defendant was only convicted on eleven of the seventeen counts, and he was completely acquitted as to the alleged crimes committed against one of the victims. On appeal, Defendant argues that the presentation of the evidence confused the jury, noting that the jurors had to re-examine the evidence during deliberations. The mere fact that the jurors requested to re-examine the evidence does not mean they were so confused as to convict him based on evidence on an unrelated count. Furthermore, the district court judge provided clear instructions that the jurors were to consider each count separately and render separate verdicts on each count. This appears to be exactly what the jury did. Finally, Defendant's argument that the joined offenses made the jury preconceive him as a criminal and made them hostile to him likewise appears to be meritless speculation in light of the returned verdicts. Thus, we do not find that the district abused its discretion in denying his motion and keeping all seventeen counts joined for trial.

***Defense Assignment of Error No. 3: Whether the district court erred in admitting the 911 calls***

Defendant's third assignment of error questions the district court's admission of the audio recording of the 911 calls admitted in connection with the

---

[14] As noted previously, another victim and several other crimes were included in the seventeen count indictment; however, those counts are not being contested on this appeal.

March 16 and June 18, 2022 incidents. Defendant argues that these phone calls constituted inadmissible hearsay and violated his Sixth Amendment right to confront the witnesses in the calls.

Appellate courts review a lower court's ruling on the admissibility of evidence for an abuse of discretion, and a lower court's ruling should not be disturbed absent a clear abuse of its discretion. *State v. D.D.*, 2018-0891, p. 36 (La. App. 4 Cir. 12/27/19), 288 So. 3d 808, 837. Regardless, even if the lower court erroneously admits evidence, its ruling should not be overturned if the error was harmless. *Id*. at p. 37, 288 So. 3d at 838 (citing La. C.Cr.P. art. 921) (other citations omitted). "An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error." *State v. Williams*, 2012-0252, p. 23 (La. App. 4 Cir. 4/17/13), 115 So. 3d 600, 613 (citing *State v. Robertson*, 2006-1537, p. 9 (La. 1/16/08), 988 So. 2d 166, 172).

A person accused of a crime has the right to confront the witnesses against him. *State v. White*, 2014-0397, p. 25 (La. App. 4 Cir. 7/29/15), 174 So. 3d 177, 193 (citing U.S. Const. amend. VI and La. Const. art. 1 § 16). Thus, an out-of-court "testimonial" statement is barred from being used against a defendant at trial "unless the declarant is unavailable and the defendant had a proper opportunity to cross-examine the declarant." *Id*. (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). This includes statements that are considered to be testimonial hearsay.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C). Hearsay is not admissible as evidence except as otherwise provided by law. La. C.E. art. 802. This is because "the value

of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability." *State v. Legendre*, 2005-1469, p. 7 (La. App. 4 Cir. 9/27/06), 942 So. 2d 45, 50 (citing *State v. Everidge*, 1996-2665, p. 7 (La. 12/2/97), 702 So. 2d 680, 685).

Keeping these general rules in mind, we turn to the facts of this case.

### i. The admission of the March 16, 2022 calls[15]

First, the jury heard the audio recordings of the 911 calls made the night Defendant tried to break into M.G.'s apartment and shot her vehicle. Defense counsel raised an objection at trial prior to the introduction of the recordings, and the trial judge overruled his objection, noting that the calls constituted a "present sense impression" exception to the hearsay rules.

A statement that describes or explains an event or condition while the declarant is actually perceiving the event or condition, or immediately thereafter, falls under the present sense impression exception to the hearsay rule. La. C.E. art. 803(1). Critical to this exception is that the statement is made simultaneously while the speaker is perceiving the event or in the immediate aftermath of the event. *See State v. Morgan*, 2003-0534, p. 6 (La. App. 4 Cir. 10/6/23), 376 So. 3d 280, 284 (citation omitted).

In the 911 call from D.T., D.T. tells the operator that she was on the phone with M.G. when she heard someone banging on the door and shooting. At the time D.T. placed the call to 911, she was no longer on the phone with M.G. When asked if she knew who was banging on the door, D.T. identifies Defendant as the perpetrator. D.T. also testified at trial before the jury when the audio recording was

---

[15] Although Defendant objects to two calls that were made that day, he only briefs his position on D.T.'s 911 call.

played. She confirmed that she had been on the phone with M.G. when she heard banging and shooting coming through the phone. On cross-examination, D.T. admitted that she was not at M.G.'s apartment when the incident took place, and she did not see what happened.

We agree with the district court that the first part of the audio recording, wherein D.T. calls the police after hearing gunshots, falls under the present sense impression exception. D.T. physically hears the banging and gunshots on the phone and immediately calls the police out of concern for her friend. However, the second part of the audio, wherein D.T. identifies Defendant as the perpetrator, constitutes inadmissible hearsay. D.T. did not physically see the perpetrator and did not give any indication in her testimony or in the 911 call as to particular things she heard that would identify Defendant as the perpetrator. As she did not physically perceive the perpetrator, her identification of Defendant is mere speculation and does not meet the present sense impression exception.

In examining the totality of the evidence, we find that the admission of D.T.'s 911 call to be harmless error. First, D.T. did testify at trial and was subject to cross-examination. Furthermore, the collective admissible evidence presented to jury also identified Defendant as the perpetrator of the crime. As previously discussed, D.T. testified to seeing bullet holes in M.G.'s car when she went to the apartment after the phone call. Officer Rojas confirmed he also witnessed multiple bullet holes in M.G.'s vehicle, collected bullet casings from the scene, and sent those same casings to the NOPD Crime Lab for testing. Mr. McElrath connected the ballistic evidence collected from the scene to the other crimes later committed by Defendant. In light of this, we find that the jury had other means to identify Defendant as the perpetrator of the crimes committed during the March 16, 2022

incident, and the district court's admission of D.T.'s 911 call constituted harmless error.[16]

### ii.   The admission of M.G.'s 911 call

Next, we analyze the admission of M.G.'s 911 call placed on June 18, 2022 after her alleged kidnapping. M.G. did not testify at trial, so the State introduced her 911 audio recording from that day. During that call, M.G. tells the operator that Defendant had beaten her, attempted to shoot her, and forcibly trapped her in her car at gunpoint. M.G. further informs the operator that Defendant attempted to drive her to his residence but that she was able to get him out of her car. Thereafter, she drove herself to the Dollar General on Earhart Blvd. and called 911. The operator asks M.G. where Defendant was, and she responded that she had left him somewhere on St. Claude Ave. about five minutes prior. M.G. tells the operator that she is bleeding and requests medical assistance. Throughout the call, M.G. sounds frightened and distressed.

We find that M.G.'s phone call falls under the present sense impression exception to the hearsay rules. Again, the present sense impression exception applies to situations wherein the declarant is relaying what she is perceiving simultaneously with the event *or in its immediate aftermath*. *Morgan*, 2023-0534, p. 6, 376 So. 3d at 284 (emphasis added). That is, "the statement may follow 'immediately' after perceiving an event, allowing only for the time needed for translating observation into speech." *Buckbee v. United Gas Pipe Line Co. Inc.*, 561 So. 2d 76, 84 (La. 1990) (citation and internal quotations omitted). While the phone call took place approximately five minutes after M.G. had kicked Defendant

---

[16] Although not briefed by Defendant on appeal, we likewise find any error in admitting the 911 call from the unknown caller would be harmless error for the same reasons outlined above.

out of her car, she was still executing her escape by placing distance between herself and Defendant. Once M.G. arrived at the Dollar General, she called 911 and reported the incident.

We also find that the audio recording constitutes an "excited utterance" under the hearsay exceptions. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." La. C.E. art. 803(2). In order for the excited utterance exception to apply, the "occurrence or event [must be] sufficiently startling to render the declarant's normal reflective thought process inoperative." *State v. McDowell*, 2023-0541, p. 11 (La. App. 4 Cir. 12/2/24), 407 So. 3d 628, 635 (quoting *State v. Falkins*, 2012-1654, p. 17 (La. App. 4 Cir. 7/23/14), 146 So. 3d 838, 850). When determining whether a statement falls under this exception, courts should consider: (1) the time span between the event and statement; (2) whether the statement is in response to an inquiry or is self-serving; (3) whether the statement expands beyond a description of the immediate event; and (4) "whether the declarant performed tasks requiring reflective thought between the event and the statement." *Id*. (citation omitted). Again, it appears that M.G. placed the 911 call shortly after escaping Defendant and as soon as she arrived at a perceived safe place. She clearly sounds distraught as she relays what happened to the 911 operator, and her story does not stray beyond the facts of the kidnapping and assault that just took place. Given this, we find M.G.'s statements to the 911 operator to be admissible.

Defendant contends on appeal that, in addition to the 911 call being hearsay, the introduction of the call violated his Sixth Amendment right to confront the witness against him. However, the Sixth Amendment is only implicated if the out-

of-court statement is testimonial in nature. *See Morgan*, 2023-0534, p. 4, 376 So. 3d at 283. An out-of-court statement is not testimonial if it was made under circumstances objectively indicating that the primary purpose was to enable police assistance to meet an ongoing emergency. *State v. Everett*, 2011-0714, p. 28 (La. App. 4 Cir. 6/13/12), 96 So. 3d 605, 626 (quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). In this case, M.G. called 911 requesting assistance immediately after escaping Defendant. Based on this, we do not find M.G.'s statements to the 911 operator to be testimonial in nature, and the Sixth Amendment is not implicated. Thus, the district court did not abuse its discretion in admitting M.G.'s June 18, 2022 call into evidence at trial.

***Defense Assignment of Error No. 4: Whether the district court erred in excluding evidence of M.G.'s prior conviction***

Defendant's fourth assignment of error relates to the district court's exclusion of a conviction packet[17] that Defendant contends relates to M.G. Defendant sought to introduce the packet into evidence in order to attack M.G.'s credibility under La C.E. art. 806.[18] The State objected on the grounds of lack of authenticity, and the district court excluded the packet from evidence.

As previously noted, appellate courts review evidentiary rulings for an abuse of discretion. *State v. Gray*, 2016-1195, p. 21 (La. App. 4 Cir. 6/28/17), 410 So. 3d

---

[17] The person in the conviction packet pled guilty to false swearing for the purpose of violating public health or safety in violation of La. R.S. 14:126.1.

[18] Article 806 of the Louisiana Code of Evidence provides:

> When a hearsay statement, or a statement defined in Article 801(D)(2)(c) or (D)(3), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, offered to attack the declarant's credibility, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as a witness identified with an adverse party.

163, 178 (citation omitted). "A prerequisite for admitting evidence at trial is that it be authenticated and identified." *Id.* (citation omitted); *see also* La. C.E. art. 901(A). The mover has the burden of authenticating his evidence by showing that the evidence is what he claims it to be. *See id.* (citing La. C.E. art. 901(A)).

Here, Defendant had the burden of showing that the person identified in the conviction packet was the same person as M.G. Defendant could have accomplished this in a number of ways, such as through the testimony of other witnesses; an expert opinion comparing M.G.'s fingerprints to those in the packet; photographs from the duly authenticated record; or evidence of an identical driver's license number, sex, race, and date of birth. *State v. Jones*, 2014-0118, p. 12 (La. App. 4 Cir. 4/1/15), 165 So. 3d 217, 225 (citation omitted); *see also State v. Richardson,* 2019-1161, pp. 7-8 (La. App. 1 Cir. 05/11/20), 303 So. 3d 1070, 1075. Yet, Defendant did not have evidence of any of the above items to prove that the "M.G." in the packet was the same as the victim in this case. All he had was the packet wherein the person in the plea deal shared a name with M.G. Defense counsel did not indicate that he had an expert who could compare the fingerprints in the packet with that of M.G. He also did not indicate that the gender, race, date of birth, or license number of the person in the packet identified the person as M.G. Considering this, we do not find that the district court abused its discretion in excluding the conviction packet from evidence.

***Defense Assignment of Error No. 5: Whether the district court erred in failing to sustain the defense's objections to the prosecution's inappropriate comments***

In assignment of error number 5, Defendant argues his rights were violated by the remarks made by the prosecution in its rebuttal closing argument that

attacked his character and mischaracterized the evidence. Defendant also contends that the State's comments impermissibly shifted the burden of proof to the defense.

The Louisiana Code of Criminal Procedure dictates that closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the [S]tate or defendant may draw therefrom, and to the law applicable to the case." La. C.Cr.P. art. 774. Although prosecutors typically have wide latitude in choosing their closing argument tactics, they should not appeal to prejudice or make personal attacks in doing so. *State v. Haynes*, 2013-0323, p. 12 (La. App. 4 Cir. 5/7/14), 144 So. 3d 1083, 1090 (citing *State v. Casey*, 1999-0023, p. 17 (La. 1/26/00), 775 So. 2d 1022, 1036); La. C.Cr.P. art.774.

The district court has "wide discretion in controlling the scope of [closing] argument." *State v. Prestridge*, 399 So. 2d 564, 580 (La. 1981) (citation omitted). Thus, the appellate court reviews prejudicial comments under a harmless error analysis. *State v. Diggins*, 2012-0015, p. 13 (La. App. 4 Cir. 10/23/13), 126 So. 3d 770, 784. Under this analysis, the appellate court cannot reverse a defendant's conviction on the basis of an improper closing argument unless the appellate court "is ***thoroughly convinced*** the argument influenced the jury" and resulted in the defendant's conviction. *State v. Reed*, 2014-1980, p. 32 (La. 9/7/16), 200 So. 3d 291, 315 (emphasis in original). In reviewing the alleged prejudicial comments, the appellate court must accord deference to "the good sense and fairmindedness of jurors who have seen the evidence and heard the arguments, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." *State v. Martin*, 1993-0285, p. 18 (La. 10/17/94), 645 So. 2d 190, 200 (citation omitted).

Defendant's main objection is to the prosecutor referring to him by his first name in a sarcastic and derisive tone. While the remarks about Defendant may have been made in a discourteous manner,[19] we do not find this alone could have resulted in a guilty verdict. *See e.g. State v. Dabney*, 2015-0001, p. 18 (La. App. 4 Cir. 9/9/15), 176 So. 3d 515, 527 (wherein the prosecutor "branded defense counsel a liar and not worthy of belief, and suggested that the defendant may have killed someone in the past."); *see also State v. Bridgewater*, 2000-1529, p. 33 (La. 1/15/02), 823 So. 2d 877, 903 (wherein the prosecutor referred to the defendant as a "cold-blooded killer" and an "animal.")

Next, Defendant argues generally, without reference to a specific instance, that the prosecutor mischaracterized the evidence presented at trial in his rebuttal closing argument. A review of the closing arguments reveals that the trial judge sustained some of the defense's objections and overruled others. Each time, regardless of the ruling, defense counsel made a speaking objection that corrected what the defense perceived to be a mischaracterization. Therefore, even if the trial judge erred in failing to sustain one of the objections, we find such an error to be harmless.

Finally, Defendant argues that the State attempted to shift the burden of proof in its rebuttal remarks. The defense highlights two instances wherein the State attempted to do this, and both instances involve the State's response to the testimony of Mr. Jones, the witness to the shooting that killed Mr. Carter. While Defendant admits that the trial judge sustained his second objection, he argues the trial judge failed to sustain his first objection. In reviewing the transcript, the two

---

[19] As the appellate court, we review the cold transcript of the trial and do not have the benefit of witnessing the demeanor and tones of the participants.

objections appear to have occurred close in time to each other while the prosecutor was making an argument in response to the defense's attack on the testimony of Mr. Jones. Within that same argument, the prosecutor admits it has the burden of proof:

> And remember this isn't the entire State's case. You've got the ballistics evidence. You've got the defendant's own inculpatory statement. But man, oh man, Thaddeus Jones. And the best that they could offer, **and it's the State's burden of proof, we accept the burden, we willingly accept it. We embrace it. Because the system is founded on it.**

Considering the trial judge ultimately sustained defense counsel's objection, in conjunction with the prosecutor's admission, and in giving deference to the fairmindedness of the jurors, we find Defendant's argument that his rights were violated on an alleged burden shifting is without merit.

***Defense Assignment of Error No. 7: Whether the district court erred in denying the defense's request for a jury instruction regarding missing witnesses and evidence[20]***

In his final assignment of error, Defendant asserts the district court erred in failing to give a jury instruction regarding missing witnesses and evidence. At trial, Defendant requested two special jury charges instructing the jury it may assume a party's failure to present a witness or evidence under its control means that the witness or evidence would have been unfavorable to that party's position.

We review the district court's ruling on a special instruction under a harmless error analysis. La. C.Cr.P. art. 921[21]; *see also State v. Richardson*, 1992-836, p. 6 (La. App. 5 Cir. 12/14/94), 648 So. 2d 945, 948. A trial judge's failure to

---

[20] This assignment of error is raised solely by Defendant in his *pro se* supplemental brief.

[21] Article 921 of the Louisiana Code of Criminal Procedure provides, "A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."

give a requested instruction constitutes reversible error only if it resulted in a miscarriage of justice, prejudiced the substantial rights of the accused, or constituted a substantial violation of a constitutional or statutory right. *State v. Brown*, 2016-0998, pp. 100-11 (La. 1/28/22), 347 So. 3d 745, 823 (citations omitted). Each party generally has a right to submit to the district court special written charges to the jury. La. C.Cr. P. art. 807. A special charge shall only be given "if it does not require qualification, limitation, or explanation, and **if it is wholly correct and pertinent**." *Id*. (emphasis added). Furthermore, the instruction must be supported by the evidence presented at trial. *Brown*, 2016-0998, p. 110, 347 So. 3d at 823 (citing *State v. Telford*, 384 So. 2d 347, 350 (La. 1980)).

Here, Defendant based his requested instruction on La. R.S. 15:432, which provides that a legal presumption exists "that evidence under the control of a party and not produced by him was not produced because it would not have aided him . . . ." The focus of this legal presumption hinges on whether the witness or evidence was "under the control" of the other party. *State v. Dyer*, 2012-1166, p. 2 (La. 10/26/12), 101 So. 3d 38, 40 (citations omitted). The jurisprudence dictates that "[w]here the witness or item is equally available to both the [S]tate and the defense, the evidence is not under the control of either party." *Id*. (citation and internal quotations omitted). Additionally, in cases where the State does not take evidence into its custody, the legal presumption under La. R.S. 15:432 does not apply. *Id*. (citation omitted).

Defendant first contends that the trial judge should have instructed the jury regarding missing witnesses in the State's case. These alleged missing witnesses are an unknown second witness to the shooting on July 14, 2022, and M.G. As it relates to the second witness to the July 14 shooting, Defendant fails to articulate in

his brief who this second witness is. Defendant also does not state that this alleged second witness was under the State's control. Nevertheless, Defendant alleges that the second witness would have testified that the car involved in the shooting was a sedan, not an SUV. Even accounting for the discrepancy in testimony, as discussed earlier, we find there was more than sufficient evidence for the jury to convict Defendant of the second degree murder of Mr. Carter. As such, we find this argument to be without merit.

As it relates to M.G., we do not find that she was under the control of the State. The record demonstrates that, although the State was initially planning to call her as a witness, she refused to testify. In fact, the State attempted to subpoena M.G. and have a Material Witness Warrant issued by the trial judge. M.G.'s attorney appeared before the trial judge to explain his client's situation. The trial judge denied the State's request for a warrant. Based on these facts, we do not find that M.G. was under the State's control, and the legal presumption under La. R.S. 15:432 does not apply.

Defendant additionally argues that the district court should have issued a special instruction regarding "missing evidence." However, Defendant's argument on this issue critiques the State's presentation of its case and the sufficiency of the evidence put before the jury. Defendant focuses on alleged evidence the State could have gathered, but Defendant does not allege that this evidence was actually under the State's control. For instance, Defendant asserts that the State could have gathered surveillance video of the June 18, 2022 incident. Yet, the jurisprudence is clear that if the State has the opportunity to take certain evidence into its custody but does not do so, then the presumption under La. R.S. 15:432 does not apply. *Dyer*, 2012-116, p. 2, 101 So. 3d at 40 (citing *State v. Arnaud*, 412 So. 2d 1013,

31

1020 (La. 1982)); *see also State v. Barfield*, 2011-515, pp. 17 (La. App. 3 Cir. 11/23/11), 81 So. 3d 760, 773. The absence of certain evidence that the State did not take under its control relates to the weight of the evidence, not the legal presumption under La. R.S. 15:432. *Id.* at pp. 2-3, 101 So. 3d at 40 (citation omitted). Therefore, we find this argument to be without merit, and the district court did not err in denying Defendant's request for a special jury instruction regarding missing evidence.

### State Assignment of Errors Nos. 1-2: Whether the district court erred in failing to adjudicate Defendant as a habitual offender on certain offenses

As discussed earlier, the State sought to have Defendant charged as a multiple offender after trial. Specifically, the State sought to have Defendant charged as a third offender on Counts 2, 4, 5, 6, 9, and 10 and a second offender on Counts 3, 8, 11, and 17. The basis of the State's request stems from a 2018 guilty plea wherein Defendant pled guilty to the felonies of aggravated battery and second degree battery. However, the district court only sentenced Defendant as a second offender on Counts 2, 4, 5, 6, 9, and 10, and it did not sentence him as a habitual offender on Counts 3, 8, 11, and 17.

The State's writ application raises a purely legal question—whether the district court complied with the mandates of La. R.S. 15:529.1 (the "Habitual Offender Statute").[22] Appellate courts review legal questions under a *de novo* standard. *Hamilton v. Burns*, 2016-0107, p. 4 (La. App. 4 Cir. 9/28/16), 202 So. 3d 1177, 1181 (citation omitted).

---

[22] At the hearing on the multiple offender bill, the State and the defense stipulated that Officer Bell, who testified as a latent finger print expert at Defendant's trial, would similarly testify that Defendant is the same person who pled guilty and was convicted of certain felonies in November 2018. Based on this stipulation, the only issue for the district court to decide was the category of offender that applied to Defendant and the length of his sentence.

The purpose of the Habitual Offender Statute is "to deter and punish recidivism by subjecting defendants with multiple felony convictions to longer sentences for their instant crimes in light of their continuing disregard for the law." *State v. Brundy*, 2016-0263, p. 10 (La. App. 4 Cir. 8/24/16), 198 So. 3d 1247, 1255 (citations omitted). Codified under La. R.S. 15:529.1, the statute applies enhanced sentences for defendants who have committed multiple felonies. The language of the statute must be strictly construed. *State v. Simmons*, 422 So. 2d 138, 147 (La. 1982) (citation omitted). As such, a lower court does not have the discretion to find a defendant not guilty of being a habitual offender if the State produces adequate evidence of such. *State v. Dean*, 588 So. 2d 708, 709 (La. App. 4th Cir. 1991). It likewise does not have the discretion to find a defendant of only being guilty of a second offender if the State proves he has been convicted of a felony offense multiple times. *See id*.

At both the motion to quash and the multiple bill hearings, defense counsel argued that the convictions in the 2018 guilty plea should only count as one conviction because they both arose from the same incident.[23] On the other hand, the State argued that the 2018 convictions should count as two separate offenses. Both parties rely on the Louisiana Supreme Court's opinion in *State v. Shaw* to support their positions. 2006-2467 (La. 11/27/07), 969 So. 2d 1233. Therein, the Louisiana Supreme Court explicitly held that multiple convictions arising from the same day and/or same occurrence may be considered separately for sentence enhancement purposes. Specifically, the Louisiana Supreme Court stated:

> We therefore hold that the language of [La. R.S.] 15:529.1 contains no prohibition against enhancing multiple sentences obtained on the same date arising out of a single criminal act or episode. . . . In clear and

---

[23] Of note, Defendant does not oppose the State's writ application on this appeal.

> unambiguous terms, the statute exposes a person who has previously been convicted of a felony to enhanced penalties for any felony committed after the date of the prior felony conviction. There is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same date, whether the convictions result from separate felonies committed at separate times or arise out of a single criminal act or episode.

*Shaw*, 2006-2467, p. 20, 969 So. 3d at 1245.

Defense counsel attempted to distinguish the *Shaw* case by arguing that the ruling did not discuss the use of ***prior*** convictions arising from one incident. Defense counsel asserted that *Shaw* was limited to whether the State could use a predicate conviction to multiple bill a defendant on multiple ***subsequent*** convictions. We do not find this argument persuasive. To hold that Defendant's prior convictions arising from a single incident do not count separately would defy the purpose of the Habitual Offender Statute. As recognized in *Shaw*, "Enhancing the sentence on only one of multiple convictions arising out of a single criminal episode actually thwarts the goal of protecting society by removing the most egregious offenders from its midst." *Shaw*, 2006-2467, pp. 17-18, 969 So. 2d at 1244; *see also State v. Williams*, 55, 290 (La. App. 2 Cir. 9/27/23), 372 So. 3d 921, *writ denied* 2023-01397 (La. 3/5/24), 380 So. 3d 570 (rejecting defendant's argument that two of his prior convictions should only count as one because they occurred on the same day).[24]

---

[24] Defense counsel also cited *Erlinger v. United States* to support the argument that multiple prior convictions arising from a single date or occurrence should count as one conviction. 602 U.S. 821, 144 S. Ct. 1840, 219 L.Ed.2d 451 (2024). However, the *Erlinger* case specifically dealt with the Armed Career Criminal Act ("ACCA"), a federal statute that requires an enhancement of a sentence when a defendant has multiple convictions for offenses committed on different occasions. Therein, the defendant argued that he was entitled to have a jury decide whether his prior convictions constituted separate instances or were a part of a single criminal episode. The United States Supreme Court's ruling in that case was limited to the ACCA and is inapplicable to our analysis of Louisiana's Habitual Offender Statute. As already discussed, the Louisiana Habitual Offender Statute, as interpreted by our jurisprudence, allows for convictions arising from the same occasion to be counted separately.

With these principles in mind, we find that the district court erred in failing to adjudicate Defendant of being a third habitual offender as to Counts 2, 4, 5, 9, and 10. The State sought to have Defendant adjudicated based on his two prior convictions of aggravated battery and attempted aggravated battery, and these convictions are counted as separate convictions despite the fact they arise from a singular date. At the hearing, the State, through its stipulation with the defense, produced adequate proof that Defendant had been convicted of those prior felonies. Therefore, the district court did not have the discretion to depart from the required enhancement.

We likewise find that the district court erred in failing to adjudicate Defendant as a second felony offender for Counts 3, 8, 11, and 17. These counts are the felon in possession of a firearm charges under La. R.S. 14:95.1 Convictions under La. R.S. 14:95.1 differ from the general rule under the Habitual Offender Statute in that the sentence may only be enhanced if "the prior felony conviction used as an element in the firearm conviction is not also used as a prior felony conviction in the multiple offender bill of information." *State v. Baker*, 2006-2175, p. 16 (La. 10/16/07), 970 So. 2d 948, 958; *see also State v. Tyrney*, 2022-0949, pp. 3-4 (La. App. 1 Cir. 3/16/23), 363 So. 3d 550, 553-54, *writ denied* 2023-00552 (La. 11/21/23), 373 So. 3d 460 (finding that the defendant's prior conviction used as a predicate for his felon in possession verdict could not likewise be used to enhance the felon in possession sentence). As already discussed, Defendant's 2018 convictions may be counted as two separate convictions for purposes of the Habitual Offender Statute. However, both cannot be counted to enhance his felon in possession sentences because at least one formed the basis for the predicate offense to convict him.

35

At the motion to quash hearing, the State admitted to the district court it was not seeking to enhance Defendant's felon in possession convictions based on both of the 2018 convictions, but only as to one. As a result, we similarly find that the district court erred in failing to adjudicate Defendant as a second felony offender for Counts 3, 8, 11, and 17.

Considering the above, we vacate the habitual offender sentences imposed by the district court and remand the matter so that the district court may re-sentence Defendant in accordance with the guidance from this opinion.

## DECREE

For the foregoing reasons, we affirm Defendant's convictions and his sentence on Count 1. We vacate his sentences on the other convictions and remand this matter back to the district court to impose the mandatory fine under La. R.S. 14:95.1 and re-sentence him as a habitual offender under La. R.S. 15:529.1.

**AFFIRMED IN PART; VACATED IN PART; REMANDED**